MAX BURSOW, APPELLEE, v. SOLOMON DOERR ET AL., APPELLANTS.

FILED MAY 15, 1914. No. 17,665.

1. **Process: SUMMONS: SERVICE: "AT" USUAL PLACE OF RESIDENCE.** Service of summons on defendant by leaving a copy "at his usual place of residence," *held* valid, within the meaning of that term as used in section 69 of the code, on a record showing that the sheriff went into defendant's yard; that he handed a copy of the summons to, defendant's wife, who was at the time not more than 20 feet from the house in which he resided; that he asked her to give the copy to defendant; that she said she would do so; and that she went into the house with it.

2. **Appeal: CONFLICTING EVIDENCE.** A verdict on substantially conflicting proof will not be set aside, where it is supported by sufficient competent evidence.

3. **Damages.** A recovery of $3,990 for assault and battery, and of $1,300 for malicious prosecution, *held* not excessive.

4. **Appeal: BILL OF EXCEPTIONS: AFFIDAVITS.** Affidavits purporting to show misconduct of counsel, to be available on appeal, must be included in the bill of exceptions.

APPEAL from the district court for Saline county: LESLIE G. HURD, JUDGE. Affirmed.

James E. Addie and Brown & Venrick, for appellants.

R. M. Proudfit and Hastings & Ireland, contra.

ROSE, J.

The petition contains two counts, one demanding $5,080 for assault and battery, and the other $2,075 for malicious prosecution. In the answers defendants deny that any unlawful assault was made upon plaintiff, and allege that he shot the wife of defendant Kelly, and that the latter thereupon assaulted plaintiff, but used no more force than was necessary to protect her from further injury and to preserve his own life; that no one assaulted plaintiff but Kelly, who was justified in doing so. The allegation that the prosecution of plaintiff was malicious and without probable cause is denied. The jury rendered a verdict in favor of plaintiff for $3,990 on the first count, and for $1,390 on the second. From a judgment on the verdict defendants appeal.

The jurisdiction of the court is challenged by defendant Doerr on the ground that the sheriff never served a summons upon him by delivering a copy to him personally, "or by leaving one at his usual place of residence," as required by section 69 of the code, containing those words. Doerr's residence was with his wife and children in a house on a farm in Saline county. The sheriff went into their yard and handed a copy of the summons to Doerr's wife, who was at the time not more than 20 feet from the house. He testified that he asked her to give the copy to Doerr; that she said she would do so; and that she went into the house with it. The contention is that the copy was not left "at" his usual place of residence, within the meaning of that word as it appears in the language copied from the statute. It is argued that "at" means "in," as used by the legislature, and that the sheriff was required to leave the copy in some part of the house. In the general use of the word there is a diversity

of meaning, owing to the context. Had the lawmakers in-
tended to limit the meaning to "in," they would have used
that word. "At," in the language quoted, has a wider sig-
nification, referring evidently to a point in space. In this
sense, some of the definitions given by the Standard Dic-
tionary are: "In proximity to; in the vicinity or region
of; close to; by; near." "At" includes "in," because leav-
ing a copy in the house occupied by Doerr as a residence
would comply with the statute, but it is used in a broader
sense. For the purpose of imparting notice, leaving a copy
by or near the residence, with the wife, who was in the
yard, within 20 feet of the house, and who took it into the
house, was as effective as leaving it in the house would
have been. It not only means "in," but it also means "by"
or "near," in a situation like that described. In this view
of the statute, the objection to jurisdiction was properly
overruled.

On the merits of the case the principal discussion re-
lates to the sufficiency of the evidence to sustain the ver-
dict. Plaintiff was assaulted, seriously injured, prosecuted
criminally, and kept in the custody of a constable five
days. The examining magistrate found that the prosecu-
tion of plaintiff was without probable cause and released
him. These facts are not disputed, but evidence that de-
fendants were the aggressors is contradicted. The assault
occurred early in the morning, November 21, 1910. Plain-
tiff had come from Poland five years earlier, and was de-
ficient in the use of the English language. When as-
saulted, he was 26 years old and unmarried. He was
small of stature, compared with defendants. He had
rented 15 or 20 acres of land in Saline county, with an
orchard, a pasture, a barn, a corral, and a windmill. There
was also on this land a frame house which he occupied
as a residence with a family consisting of Adolph Suesz
and his wife and children. The house was in an open
yard between the orchard and the pasture, with a public
road in front. Plaintiff, under a lease, had been farming
an unfenced 80-acre tract across the road. Part of it was
in corn, which plaintiff had been husking. Adjoining the

cornfield, defendant Doerr, a neighboring farmer, had an open field of wheat growing across the road from the house occupied by plaintiff, who, earlier in the season, had farmed the land on which the wheat was growing. Horses owned by plaintiff had been in the wheatfield two or three times, and he had been reminded of the fact. Defendant Kelly had been in the neighborhood four or five days only, and was an employee of Doerr. The material parts of the story told by plaintiff and his witnesses may be summarized as follows: On the morning of the assault plaintiff had hitched a team to a wagon and had driven to his cornfield to husk corn. A mare and two colts had broken away from him at the corral before he left, and had run across the road into Doerr's wheatfield. Plaintiff could not catch them at the time, but, thinking he could do so a little later, went to his cornfield. When there he saw Doerr, his two daughters, Emma and Alma, and Kelly, and the latter's wife. They had three teams and wagons. They drove onto Doerr's wheatfield. The men chased the mare and the colts and tried to drive them off. Plaintiff immediately returned with his team and wagon and left them at the windmill back of his house by the corral. In the meantime Mrs. Kelly and Emma Doerr left their wagons, went to a private lane in plaintiff's yard between the road and the corral, and tried to prevent the mare and the colts from going in, the intention of defendants being to drive the trespassing animals away for the purpose of impounding them. The women were near plaintiff's house. He protested against their driving his stock away from his premises. The men approached hurriedly. Observing that they meant mischief, plaintiff crawled through the fence into his pasture and tried to escape by flight. Doerr followed him, and Kelly attempted to intercept him. He changed his course to avoid Kelly and ran into Doerr, who beat him severely. Kelly came up, knocked him down and pounded him. Plaintiff was helped up by defendants, and went to his house pursuant to their orders. In the meantime the mare and the colts returned to the corral. Defendants started to take them away, and plaintiff pro-

tested, complaining bitterly. Again apprehending danger, plaintiff went into his house. Defendants and the women came up. Mrs. Suesz went to the front door, said she was sick, and told the assailants not to come in. They went to the back door, which had been locked, broke it open, and entered. Plaintiff ran up stairs, got a shotgun belonging to Suesz, and threatened to shoot. The stairway door below was opened. To frighten the intruders, plaintiff fired without stopping them, the shot striking the casing near the top of the stairway door. He again threatened to shoot, and pulled the trigger, but the second cartridge did not explode. He was dragged down stairs and beaten into insensibility. Defendants took him to Doerr's in a wagon, and from there to Friend, where they had him arrested. Plaintiff was unable to give an account of his injuries, but it is shown by physicians or by other witnesses that there was a deep wound in one of his legs; that blood ran from his nose, from his mouth, and from one of his ears; that an eye was closed; that a lip was cut; that his head and face were bruised; that his skull was fractured; that his brain was injured; that one side of his body was partially paralyzed, temporarily interfering with his speech and with his sight; that his hearing in one ear was permanently injured, if not destroyed. The interior of the house, after the assault, as described by witnesses, bore marks of violence. This is the substance of the story told by plaintiff and his witnesses.

On the other hand, defendants testified that plaintiff was the aggressor; that he had been warned to keep his horses out of Doerr's wheatfield; that defendants were pursuing the advice of counsel in attempting to impound the trespassing animals; that when plaintiff came back from his cornfield he used profane language and threatened to shoot Kelly's wife and Doerr; that defendants were not in his pasture or house; that he came out of his house and shot Mrs. Kelly; that he aimed at Doerr, the gun failing to go off; that he was assaulted by no one except Kelly, who did not strike him until after he shot Mrs. Kelly.

The jury evidently believed plaintiff's version of the controversy. It is supported by ample evidence. The proofs are conflicting, and the verdict settled the issues of fact. There is no substantial ground for setting aside the verdict on either count as excessive. Plaintiff was permanently injured. While partially paralyzed and at times unconscious, he was in the custody of a constable for five days. He was comparatively a stranger in a strange land. Suffering and mental anguish were inevitable results of the assault and of the prosecution. No sufficient reason for disturbing the judgment as unsupported by the evidence or as excessive has been suggested or found.

Some complaint is made of rulings in admitting and in rejecting evidence, and in giving and in refusing instructions, but it is clear that in these respects no ruling properly assailed is prejudically erroneous.

An assignment of error is directed to alleged misconduct of an attorney for plaintiff in treating jurors to cigars. The bill of exceptions contains no evidence of such misconduct, and for that reason the assignment is overruled.

Finding no error in the record, the judgment is

AFFIRMED.

LETTON, FAWCETT and HAMER, JJ., not sitting.