## SMITH *v.* UNION COUNTY.

Opinion delivered December 3, 1928.

*Allyn Smith,* for appellant.

HUMPHREYS, J. Appellant filed petitions in the county court of Union County, in the years 1926 and 1927, to be relieved from the payment of his personal property tax in Union County, which was assessed to him in said county over his protest. He based his petitions for relief upon the ground that he had assessed and paid taxes upon the same property in Baxter County for both years, alleging that he was a resident of the latter county within the meaning and intent of § 9890 of Crawford & Moses' Digest, which is as follows:

"Every person of full age and sound mind shall list the real property of which he is the owner, situated in the county in which he resides, the personal property of which he is the owner, and all money in his possession; and he shall list all moneys invested, loaned or otherwise controlled by him, whether for himself or as agent, attorney, or on account of any other person or persons, companies or corporations whatsoever, and all moneys deposited, subject to his order, check or draft, and credits due from or owing by any person or persons, body corporate or politic, whether in or out of said county or State."

On a hearing each petition was denied, from which appeals were taken to the circuit court, the first appeal being filed November 8, 1926, and the second on November 14, 1927.

In the circuit court the cases were consolidated and tried on the 12th day of March, 1928, resulting in an affirmance of the judgments of the county court denying the petitions, from which is this appeal.

The facts reflected by the record are as follows: Appellant established a home at Cotter, Baxter County, in 1906, in which he and his mother actually lived until her death in January, 1922. Immediately after her death he opened a law office in connection with Sizer & Gardner in Monett, Missouri. He left his home and law office in Cotter furnished, locked, and unrented, when he went to Monett. He made his personal property returns for that year in Baxter County, Arkansas, and returned to Cotter to cast his vote. He later severed his connection with Sizer & Gardner, and returned to Cotter on account of ill health, where he actually occupied his home and office for a period of eighteen months, assessing and paying taxes on all his personal property in Baxter County. In December, 1924, he went to Smackover, in Union County, and opened a law office, leaving his home and law office in Cotter furnished just as it had been, locked, and unrented. In 1925 he assessed all his personal property and paid his taxes, including his poll tax, in Baxter County. In June, 1925, he purchased a lot in Smackover, and built a law office. In September of that year he shipped his Arkansas Reports and some of his office furniture to his office in Smackover, leaving a desk and most of his office furniture and library in his office at Cotter. In 1926 he assessed all his personal property, including the property he had shipped to Smackover, and paid taxes thereon, including his poll tax, in Baxter County. He returned to Cotter to cast his vote at each election since he opened his office in Smackover. In 1925 and 1926 the assessor of Union County, over the protest of appellant, assessed the personal property he had moved to his office in Smackover from Cotter. Occasionally he returned to Cotter, and during the time he was there he would actually occupy his home and office, and he and his daughter, who teaches school in Kansas City, spend a part of each summer in

Cotter, at which time they actually occupy the home and he actually occupies his office. At all other times the home and office remain furnished, locked, and unrented, since opening his office in Smackover. He does a general practice at Smackover, and has been there constantly, except when he went away on business and such time as he spent with his daughter in Cotter during the summer months. He has always claimed Cotter as his home.

In the case of *Crone* v. *Cooper*, 43 Ark. 547, after reviewing many cases discussing the meaning of residence, domicile and citizenship, we said: "We may conclude from the cases that, in contemplation of the attachment laws, residence implies an established abode, fixed permanently for a time for business or other purpose, although there may be an understanding existing all the while to return at some time or other to the principal domicile; but so difficult is it found to provide a definition to meet all the varying phases of circumstances that the determination of this question may present, that the courts say that, subject to the general rule, each case must be decided on its own state of facts." In the case referred to the court ruled that, notwithstanding the fact that the debtor had a home or domicile in St. Louis, Missouri, yet he was a resident of Walnut Ridge, in this State, where he spent about three-fourths of his time, conducting a partnership contract business in connection with his partner, Oppenheimer. In that case his family actually resided in St. Louis, and the debtor was in the habit of speaking of St. Louis as his home. According to the facts in the instant case, appellant spent most of his time in Smackover in the practice of his profession, and actually lived there, from the time he opened his office, instead of at Cotter, where he maintained a closed, unrented and unfurnished home and office. Residence, as used in § 9890, Crawford & Moses' Digest, means the place of actual abode, and not an established domicile or home to which one expects to return and occupy at some future time. We think the construction placed upon the

word "residence" under the attachment laws of this State should be placed upon the same word under the taxing laws of the State.

No error appearing, the judgment is affirmed.