SHEPHARD *v.* HOPSON.

4-3918

Opinion delivered September 23, 1935.

E. L. Holloway, C. T. Bloodworth, C. T. Bloodworth, Jr., for appellants.

Hopson & Hopson, for appellees.

BUTLER, J. In 1923 the appellee, D. Hopson, sold a tract of land to Virgie M. Shephard. Shephard procured a loan from the New England Securities Company and paid the proceeds thereof to Hopson as a part of the purchase price for the land. He then executed a second mortgage to Hopson on the same land to secure the balance of the purchase price. The notes which this second mortgage secured were signed by Virgie M. Shephard and Mary J. Shephard, the appellants. Virgie M. and Mary J. Shephard defaulted in the payments on the first mortgage, and suit was brought by the Enosburg Falls Savings Bank, the owner of the notes secured by the first mortgage, against the Shephards. The appellee, D. Hopson, intervened, praying for judgment for the sums due him and foreclosure on his second mortgage.

At the time these suits were filed Virgie M. Shephard was absent from the State, and service was had upon him under the third subdivision of § 1144 of Crawford & Moses' Digest, which provides that service may be had by leaving a copy of the summons at the usual place of abode of defendant with some person who is a member

of his family over the age of fifteen years. Process was served in the suit of Enosburg Falls Savings Bank on August 19, 1929, and on the cross-complaint of D. Hopson on the 17th day of September following. On the 6th day of October, 1929, a default decree was rendered on the original suit, and a like decree was rendered on the 8th day of October, 1929, on the intervention and cross-complaint of D. Hopson. The land was sold and the proceeds applied to the payment of the first mortgage, and nothing was paid on the Hopson judgment.

Virgie M. Shephard inherited a small tract of land from his grandmother, who died on December 11, 1930. On December 16 of the same year Mary J. Shephard and some of her children moved on this land and have continued to reside thereon until the present time. After the death of the grandmother, Virgie M. Shephard conveyed this land to Mary J. Shephard and her children, the issue of her marriage with the said Virgie M. Shephard.

On October 6, 1932, appellee, Hopson, filed suit to revive the judgment rendered October 8, 1929, to set aside the deed executed by Virgie M. Shephard to Mary J. Shephard and her children. To this action appellants answered denying the validity of the default decree of October 8, 1929, on the ground that said judgment was procured without service of process being had upon them, and alleging, in addition, a defense to the action of D. Hopson which resulted in the aforesaid default judgment.

At the hearing of the case on the proof adduced, the court proceeded first to decide upon the ground to vacate the judgment as provided by § 6294 of C. & M. Digest and held that the summons issued on the cross-complaint of Hopson was duly served upon Virgie M. and Mary J. Shephard and that the judgment and decree rendered October 8, 1929, is a valid and binding judgment, which, from the date of its rendition, was a valid and subsisting lien on all the real property situated in the western district of Clay County, including the lands conveyed by Virgie M. Shephard to Mary J. Shephard and others sub-

sequent to the rendition of said decree, and dismissed appellants' bill of review for want of equity. The court further found that the deed made by Virgie M. Shephard to his children and their mother was voluntary and for the purpose of defrauding the appellee in the collection of his debt, and decreed that the said deed be annulled and set aside.

It is undisputed that the deed cancelled by decree of the court was voluntary, and therefore the correctness of the decision cancelling said deed depends upon the correctness of the court's finding that there was due service upon which the decree of October 8, 1929, was based. The homestead right as to the land conveyed could not have vested in the wife and children until title to same was acquired by them and actual residence thereon, which it is admitted did not occur until the latter part of the year 1930, for, if the Hopson judgment was valid, its lien immediately attached to the land on the death of Shephard's grandmother which occurred on December 11, 1930. As before stated, service was had under subdivision 3, § 1144, *supra,* and the return of the officer on said summons is as follows (omitting caption):

"On the 17th day of September, 1929, I have duly served the within writ by delivering a copy, and stating the substance thereof to Mary J. Shephard, and by leaving a copy with Mary J. Shephard for Virgie M. Shephard at his usual place of abode with a member of his family over the age of fifteen years, as I am herein commanded.

"[Signed] George A. McNeil, Sheriff,
"By J. M. Curtis, D. S."

It is contended that the process was not served at the usual place of abode of Virgie M. Shephard. In *Duval* v. *Johnson,* 39 Ark. 182, it was held that the term "usual place of abode" is synonymous with "residence." It is generally understood that one's usual place of abode or residence is where (if he is a married man) he abides with his wife and family. Therefore the house in which one's wife and children are living is presumed to be a man's "usual place of abode" within the meaning of the stat-

ute, although he may be absent at the time of service of process and such absence may have continued over a considerable period of time. Undoubtedly a man has the absolute right to change his place of abode whenever he pleases, and this is accomplished when he removes from one place with the intention of abandoning such place of abode and establishing a residence in another. locality where he expects to abide without the intention of returning to the place from which he has removed. When, however, he leaves a wife and family remaining, the burden is upon him in order to show a change of abode to establish not only the actual abandonment of the first residence, but also that the removal is permanent and made with the intention of making his residence at some other place. *McGill* v. *Miller,* 183 Ark. 585, 37 S. W. (2d) 689; *Duval* v. *Johnson, supra.* That Shephard's home in Clay County was no longer his usual place of abode is based on his testimony to the effect that he had separated from his wife and permanently removed from the State. At the time the bill of review was filed, Shephard and his wife were divorced and she had married one Blevins. They testified in effect that they had separated in June of 1928 and Shephard had gone to Michigan and was not in Arkansas from that time until after the year 1929 and was not in the State of Arkansas at all during the last-named year. Shephard also testified that Hopson knew that he had separated from his wife and that he had permanently left the State. It was shown, however, by evidence which is not disputed that Shephard was actually in the town of Corning, Arkansas, and consulted with a lawyer on October 8, 1929, the day that the judgment sought to be set aside was entered. At Shephard's request a letter was written by the attorney making claim for a credit on the demand sought to be enforced by the savings bank in its suit. The attorney who wrote the letter testified that Shephard was in his office on that day, and the letter was written at his request, and this testimony is not disputed by Shephard. Mr. Curtis, the deputy sheriff, testified that when he was serving processes in these cases he talked with Mrs. Mary J. Shep-

hard; that she told him that the place at which service was made was the residence of Virgie M. Shephard, and that they were not separated. Shephard and his wife were not divorced until the fall of 1930. These circumstances dispute the testimony given by Shephard and Mary J. Shephard Blevins, raising a question of fact for the decision of the chancellor.

Mary J. Shephard Blevins testified that she was not at home on September 17, 1929, until late in the afternoon, and that she was not served with any summons for herself or that a copy of same was left with her for Virgie M. Shephard. Some of her children and others who were picking cotton at the Shephard home on that day testified that Mrs. Shephard was not there at all, and one of her daughters stated that while she was picking cotton the officer came and delivered the summons to her; that she did not deliver them to her mother upon her return or mention the fact to her. There was also testimony to the effect that Mrs. Shephard was at the home of a neighbor on that day, and at the time it was claimed that service was had upon her. It was shown that there is a close personal resemblance between Mrs. Shephard and her daughter who claimed that the service was upon her, and it is argued that the officer was mistaken, that he was only slightly acquainted with Mrs. Blevins, and was deceived by the resemblance between her and her daughter when he was serving the process. It is true that Mr. Curtis, the officer, in answer to a question regarding his acquaintance with Mary J. Shephard and the length of time he had known her, stated that he was "only slightly acquainted with her. I know her when I see her. I don't know how long I have known her." He further stated, after describing Mrs. Shephard's appearance, that he was positive that it was in fact she whom he had served; that he had personal recollection of the time and place of service, was not mistaken as to her identity, and explained to her fully the nature of the summons at the time of the service; that, instead of saying anything which would indicate that she and Virgie M. Shephard were not living together or that he had

moved from the State of Arkansas, she stated that that was Virgie's home, and that they were not separated. Mr. Curtis, within three weeks before September 17, namely August 29, had at the same place served upon Mrs. Shephard for herself and Virgie M. Shephard, her husband, a summons in the suit of Enosburg Falls Savings Bank, and there was no contention upon her part that she was not the person served on that occasion. This fact supports the testimony of Curtis as to the identity of the person served on September 17.

Whether the place of service was at the usual place of abode of Virgie M. Shephard and whether such service was had on Mary J. Shephard were questions of fact, and we cannot say that the answer of the chancellor to these questions in the affirmative was against the preponderance of the evidence.

Mr. Curtis, the deputy sheriff, testified that he delivered the summons and explained the contents thereof to Mrs. Shephard while she was in her cotton patch about two hundred feet from the house. On this testimony appellants contend that, even if the residence at which the service was had was the usual place of abode of Virgie M. Shephard and the service was had upon Mrs. Shephard, the same does not satisfy the requirements of the statute in that service was not at the usual place of abode of Virgie M. Shephard. This contention is based on the case of *Kibbe* v. *Benson*, 17 Wall. 624, 21 U. S. (law. ed.) 741, where it was held that service made 125 feet from the dwelling house and not within any of the adjoining buildings or outhouses was not sufficient service within the meaning of a statute of Illinois prescribing how service may be had in actions for the recovery of real estate, as follows: ''If the premises are actually occupied, the declaration shall be served by delivering a copy thereof with the notice above prescribed to the defendant named therein, who shall be in the occupancy thereof, or leaving the same with some white person of the family, of the age of ten years or upwards, at the dwelling house of such defendant, if he be absent.'' The summons in that case was delivered to the father of defendant at a place

about 125 feet away from the dwelling house. The officer testified that he handed the summons to the father of defendant, who, after taking it in his hands, threw it upon the ground muttering some angry word. In commenting upon the effect of the statute, the court said the intention was to make delivery of a summons to a person and at a place as would make it likely that the person interested would receive proper notice of the nature of the summons and its delivery. Under the circumstances the court held that the service was not sufficient to be such as would reasonably carry into effect the intention of the statute. One of the familiar meanings of the preposition "at" is "near to" or "in the vicinity of." It would be unreasonable in all cases where the defendant was absent from home to require the officer serving a summons to enter the house or wait on the doorstep for some member of the family to arrive who was in the immediate vicinity. It seems sufficient if the member of the family served is in close proximity to the premises and is of suitable age and discretion so as to make it reasonable that delivery of the copy of the summons, or information thereof will be given the defendant.

Mrs. Mary J. Shephard was shown to have been about thirty-five years of age, and at the time she was served was within about two hundred feet of the house, and on the same premises. We think this is a sufficient compliance with the requirement of the statute that delivery of summons shall be at the usual place of abode of the defendant. This is the effect of the holding in *State* v. *Superior Court*, 84 Wash. 392, 146 Pac. 834, and in *Bursow* v. *Doerr*, 96 Neb. 219, 147 N. W. 474, Ann. Cas. 1916 C, 248.

From the views expressed it follows that the decree of the trial court must be affirmed. The appellee has moved in this court for an order to appoint a commissioner to sell the lands involved in this litigation. This court has no original jurisdiction on the matter requested, and the motion is overruled.