BURBRIDGE, TRUSTEE *v.* REDMAN.

4-8080                                             200 S. W. 2d 492

Opinion delivered March 10, 1947.

*Miles & Amsler, R. W. Launius, Francis W. Wilson* and *J. Bruce Streett,* for appellant.

*L. B. Smead* and *J. B. Dodds,* for appellee.

GRIFFIN SMITH, Chief Justice. The action was for personal injuries and property damages following a collision between appellee's automobile and appellant's bus, July 3, 1945. The complaint alleged that Redman sustained damages to his person and property in the sum of $50,900. The jury was instructed that there was no legal proof that the plaintiff's automobile was damaged, hence if a verdict should be returned it should not include compensation for property loss. Appeal is from judgment for $12,000, principally to compensate a knee injury. There is evidence of complete recovery; but on the other hand medical witnesses testified to partial impairment. If this were the only issue plaintiff would prevail and judgment for an appropriate sum would be

affirmed. Venue, however, was challenged; and on this point appellants are correct.

Redman, thirty-five years of age, was born in Izard County. At an early age he was taken by his parents to White County, where his mother still lives at Searcy. After marriage in 1938 Redman worked for Arkansas Pipe Line Company at various places in the State. In 1942 he accepted employment in electrical construction incident to war plants and moved with his wife and two children to Hot Springs. There he rented a home and remained until December, 1943.

Redman's next move was to Tennessee. In December, 1944 (having spent approximately a year at Oak Ridge, living with his family in a trailer) he returned to White County, Arkansas, accompanied by Mrs. Redman and the two children. Early in December he obtained work with a sub-contractor who assisted in building the naval ordnance plant near Camden, in Ouachita County. During the same month he purchased a home in Hattieville, Conway County. The warranty deed recites that the property includes a dwelling house, barn, and garage. Redman assessed this property, household goods, and other effects, for 1945 and 1946. Furniture stored in Hot Springs was moved to Hattieville. Thereafter appellee's wife and two children, and his wife's mother, occupied the property. The question is whether appellee was a resident of Ouachita County in July, 1945, within the meaning of Act 314 of 1939.[1]

When the mishap resulting in Redman's injury occurred he was en route from Hattieville to Searcy. The collision was on Highway 67, two and a half miles from Jacksonville, in Pulaski County. Redman's wife had spent the week end with him in Ouachita County. He had taken her home, and was on his way to Searcy to get his mother-in-law, ultimate destination being Camden.

---

[1] The statute in part reads: "All actions for damages for personal injury or death by wrongful act shall be brought in the county where the accident occurred which caused the injury or death, or in the county where the person injured or killed resided at the time of injury."

While working at the ordnance plant Redman was assigned to quarters in the naval barracks, but when his wife came on visits the couple procured hotel accommodations at Smackover. Their eldest child (seven years of age) was in school at Hattieville.

J. B. Dodds, one of appellee's attorneys, happened to be driving on Highway 67 when the wreck occurred. After bringing Redman to North Little Rock Dodds took him to a hospital at Searcy, where he remained six days. The institution's records show that appellee gave his address as 211 South Oak St., Searcy. This was his mother's home.

November 17, 1944, Redman applied to the Arkansas Revenue Deppartment for a driver's license. The Supervisor's certificate, admitted in evidence, shows that Redman's address was given as Hattieville, " . . . and the information contained in the application upon which said license was issued was supplied by the person to whom the license was issued". After the driver's license was issued (appellee says it was procured by his mother-in-law) he applied for license to operate his automobile. The application was made Dec. 4, 1944: Question: "Did you make that application?" Answer: "Yes, Sir". Question: "In person?" Answer: "In person. I traded a car off that had Tennessee tags: when I did that I had to buy [new ones in Arkansas"].

The home purchased by appellee at Hattieville was the only one he had ever owned. He went "nearly every week" from Camden to Conway County to be with his family. He had never voted or paid a poll tax in Ouachita County; nor, seemingly, had he ever participated in a primary, although he thought "maybe" he had paid a poll tax in Tennessee.

Another circumstance emphasized by appellants bearing upon Redman's residence is an official report by the State Police. On cross examination questions were: "You don't know who advised the State Patrolman that your name was Doyle Redman, and your address was Hattieville, do you?" Answer: " I did that in North Little Rock". Question: "You told [the patrolman]

that your name was Doyle Redman, and your address was Hattieville?" Answer: "Yes, Sir".

After the collision appellee was required to go to North Little Rock, where he was charged with reckless driving. Bail was supplied by a professional bondsman. After being released Dodds took him to Searcy, where hospitalization began. Prosecution did not follow the arrest.

In the face of explicit answers given to the direct questions just quoted, the following is reflected by redirect examination:

Question: "When you went back to North Little Rock did you, or not, give your address to the patrolman as Hattieville?" Answer: "I wouldn't say, but I don't think so". Question: "What is your best judgment?" Answer: "I would say 'no'. I don't know whether I did, or Mr. Dodds did. I don't have any recollection of it".

Appellee relies upon *Norton* v. *Purkins, Judge,* 203 Ark. 586, 157 S. W. 2d 765, where it was said that "reside", as used in Act 314, does not necessarily mean one's permanent abode "or legal residence or domicile". Undisputed evidence in the Norton-Purkins case was that the plaintiff went to Ouachita County to engage in work Norton-Wheeler Stave Company was having done there. Hudson (the plaintiff) was accompanied by his wife and children and lived at Bearden, estimated by various witnesses as a minimum of a few months and a maximum of two years. One of Hudson's children was in a Bearden school and had been attending the institution for approximately four months when the injury resulting in litigation occurred. The opinion, written by Mr. Justice Greenhaw, contains the statement that "Even though Hudson claimed Cleveland County as his legal domicile with the fixed intention of ultimately returning there, still we are constrained to hold, from the facts in evidence, that he was a resident of Ouachita County on the date of his alleged injury within the meaning of the Venue Act".

The case affords an excellent example of the Court's determination that a plaintiff's contentions in respect of residence must be considered in connection with his conduct, from which an intent will be deduced.

In the Norton-Purkins case Hudson had some household effects in Cleveland County, and had a temporarily rented residence; but by actions he had very definitely shown a purpose to reside elsewhere.

So, in the case at bar, Redman—insofar as family life was concerned—had settled in Hattieville. It is true he continued working at the ordnance plant; but, almost concurrently with accepting the employment, he bought a home in Conway County, took his furniture out of storage at Hot Springs, shipped it to Hattieville as soon as the residence became available, and even before possession could be acquired he moved his wife, children, and mother-in-law to the town to await occupancy. The act of buying this property would not of itself be conclusive. If thereafter Redman had disclosed a purpose to remain a resident of Ouachita County and had, by substantial conduct, evidenced this decision of mind, a different situation would be presented.

Another case in point is *Twin City Coach Co.* v. *Stewart, Adm'r.,* 209 Ark. 310, 190 S. W. 2d 629. There was no disagreement as to the majority opinion that venue was in Logan County; but, since this opinion held that an instructed verdict for the defendant should have been given, facts connected with the decedent's actions affecting the contention that she had chosen Fort Smith as her residence were not detailed. The dissenting opinion, while expressing the majority's view that venue was in Logan County, elaborated upon evidence touching venue, and disagreed with the general result. (*Shephard* v. *Hopson,* 191 Ark. 284, 86 S. W. 2d 30.)

The judgment is reversed and the cause is remanded with directions to sustain the defendants' motion to quash service.