MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON,
TRUSTEE *v.* LAWRENCE.

4-8930                                     223 S. W. 2d 823

Opinion delivered October 3, 1949.

Rehearing denied November 14, 1949.

*Henry Donham* and *William J. Smith,* for appellant.

*J. H. Lookadoo* and *H. B. Stubblefield,* for appellee.

FRANK G. SMITH, J.   Appellee recovered judgment for $25,000 to compensate an injury which he sustained in a collision between one of the passenger trains of appellant railroad company and a taxicab he was driving in the City of Little Rock.

A motion was filed to dismiss the case upon the ground that the Clark County Circuit Court, where the suit was brought and tried, was without jurisdiction thereof, inasmuch as appellee was not a resident of that county and the injury occurred in another.   The motion

was overruled and the trial resulted in the judgment which this appeal seeks to reverse.

The venue of this and similar litigation is controlled by Act 314 of the Acts of 1939, which provides that all actions for damages for personal injury or death by wrongful act shall be brought in the county where the accident occurred which caused the injury or death, or in the county where the person injured or killed *resided at the time of the injury*.

The answer to the question of venue posed depends upon the answer to these two questions. (1) Is residence synonymous with domicile? (2) If not, was appellee a resident of Pulaski county at the time of his injury? If the words "Residence" and "Domicile" are synonymous, then the Clark County circuit court had jurisdiction, as we think the testimony was sufficient to support a finding that appellee's domicile was in Clark County at the time of his injury.

In our opinion the words are not synonymous and cannot properly be used interchangeably. Cases without number have pointed out the difference in meaning which the words import, and our own early case of Krone v. Cooper, 43 Ark. 547, is one of these. A headnote in that case reads as follows: "'Domicile is of broader meaning than residence.' It includes residence: but actual residence is not indispensable to retain a domicile after it is once acquired. It is retained by the mere intention not to change it." In the body of that opinion Chief Justice COCKRILL said: "The appellant's testimony, taken alone, would establish, not only an actual residence, but a domicile in this state. His honor, the circuit Judge, who determined the facts upon the testimony, might well have concluded, as he doubtless did, that appellant's acts and previous statements about his domicile, contradicted his testimony in that behalf. Admitting, however, that the testimony clearly shows that appellant's domicile was in St. Louis, we find nothing sufficient to show that his actual residence was not in Arkansas. The burden of showing this was upon the appellees. It was not shown that appellant's regular

place of abode, his dwelling place, was in St. Louis. If it had been, the bare fact that he spent a great part of his time in Arkansas attending to business interests there, would not have been a sufficient answer."

We cannot assume that the General Assembly was unaware of this difference in the meaning of the two words, but on the contrary, we must assume that it was aware of the fact that a person might have a residence in one place and his domicile in another. The venue act does not provide that the plaintiff may sue in the county of his domicile, but provides that if the suit is not brought in the county where he was injured it must be brought in the county where he "resided at the time of injury." The question is not in what county did appellee reside for the longest period of time, but at the time he was injured. In our opinion the undisputed testimony admits of no other reasonable construction than that appellee was a resident of Pulaski County at the time of his injury. The following testimony was offered by appellee, or his wife, or her mother, and was undisputed by them or any one of them.

Appellee was born in Clark County, and enlisted as a soldier in World War II as a resident of that county, and upon receiving an honorable medical discharge from the army, returned to that county and registered his discharge there. His wife was also a native of Clark County and for some time after their marriage they resided in Gurdon, Clark County, and kept house there. Their only child was born in that county and both testified that that county was their home and that it was their present intention, and had always been, to return to that county.

Appellee has had a very peripatetic career which he detailed as follows. He entered the army in 1941 and was discharged Nov. 3, 1943, and after his discharge he worked in Gurdon until April, 1944, when he came to Little Rock and secured employment from the Missouri Pacific Railroad Co. in which employment he continued for a period not disclosed by the record. He returned to Gurdon, for two weeks or longer, after which he was

employed by Swift & Co. in Little Rock for some two to five months. He quit that job and went to the State of Indiana, where he remained a month and then returned to Gurdon. He was again unable to secure employment there at a satisfactory wage, and he returned to Little Rock where he secured employment from the Terminal Van & Storage Company, in which he continued from July to January 1, 1946. He quit that employment and went to Arkadelphia where his wife's father and mother lived, and after a short visit there went to Gurdon. But this too was a mere visit as he had no home in Gurdon at that time. He went to Texas and while there obtained a driver's license to operate a truck and gave as his place of residence the city in which he was employed. He testified that it was his practice always to give as his place of residence the place of his employment.

He soon left Texas and returned to Little Rock where he was given employment by the Olmstead Mfg. Co., which he soon quit and went to St. Louis where he remained from July to October, 1946. He returned to Little Rock and went to work for Swift & Co. in Little Rock for three or four weeks, where he continued to work until November 21st or 22nd, when he was employed by the Yellow Cab Co. of Little Rock, in which service he was engaged when he received the injury to compensate which this suit was brought.

Appellee left Gurdon in 1944 and has not resided there since. He testified that when he left Gurdon he stored his household effects in a house which his mother had rented, which was not rented as a residence, but for storage purposes only. He visited Gurdon frequently since leaving there, but his trips were mere visits as he had no home there. He stated that the purpose of these trips was to see after his things and to see about his dog which he had left there. His effects which he did not take to Little Rock remained in storage until February, 1947, when they were brought to Little Rock by his father.

In his attempt to show that he did have a residence in Gurdon he was interrogated as follows:

Q. "Where do you live now in Gurdon?"

A. "I can live with my aunt and uncle."

Q. "You can live with your aunt and uncle?"

A. "That's right."

Q. "You consider your home with your aunt at Gurdon?"

A. "At the present time if I would go there it would be."

This is the nearest approach to showing that appellee had a home in Gurdon and that testimony shows only that there was a home to which he might have gone, but did not go.

Appellee testified that before seeking employment with the taxicab Co. he went to Gurdon to secure assistance in establishing a long distance hauling business, and had he secured that assistance Gurdon would have been his home, but he did not secure this assistance and did not establish this business and he returned again to Little Rock and entered the employment in which he was engaged when injured. There appears to be no doubt that appellee ceased to be a resident of Gurdon in 1944 although he may have retained his domicile at that place.

In his various applications for employment in Little Rock appellee gave as his place of residence a Little Rock address, first one and then another. He obtained a chauffer's license for the years 1945, 1946 and 1948 and in each application he gave a Little Rock address.

While employed from and after 1944 at intermittent periods in Little Rock his wife visited occasionally in Gurdon, but more often in Arkadelphia where she was called on account of the illness of her mother. When appellee came to Little Rock in 1944 his wife secured employment in December of that year with the Little Rock Laundry where she worked for about two years. This work was not continuous, but was interrupted by visits which she made to Arkadelphia to attend her mother. But they kept house in Little Rock, living in a

furnished apartment, or rather in several different ones. They put their child in school in Little Rock as soon as he was able to enter, and they changed to another school in that city when they changed their residence. Appellee's wife was asked, "Where was your home in 1946," and she answered, "Arkadelphia." The attorney then asked, "Arkadelphia and Gurdon?" and she answered, "Yes, Arkadelphia and Gurdon." When attending her mother she stated that her son was with her and that appellee himself was with her while she was attending her mother, but the son never attended any school except in Little Rock.

Had appellee brought this suit in Little Rock no one would have thought of questioning his right to do so as a resident of that city, apart from that being the place of his injury. At any rate that right clearly existed as appellee and his wife and child were residing in Little Rock when appellee was injured. It is true they were living in a furnished apartment, which was their place of residence, although they had household effects in storage at Gurdon where they had been stored since 1944. The injury occurred Nov. 30, 1946, and the suit was not filed until Sept. 16, 1948. The case was tried in Arkadelphia and the judgment rendered Nov. 3, 1948. During this nearly two year interval appellee continued to reside in Little Rock with his wife and child, making visits both to Gurdon and Arkadelphia. He was confined in the hospital for a week after his injury and later secured employment with the Ark. Motor Freight Lines Inc. in which employment he sustained another injury Sept. 26, 1947, for which he received compensation checks in payment thereof, all of which were sent to him at his Little Rock address.

Appellee insists that as the animus manendi, or the intention of remaining in Little Rock, was not shown, no residence was acquired in that city and in support of that contention the recent cases construing our 90 day divorce law, which was Act 71 of the Acts of 1931, p. 301, are cited. In the first opinion construing that Act the case of Squire v. Squire, 186 Ark. 511, 54 S. W. 2d 281. decided Nov. 21, 1932, it was held that under

this act, authorizing the granting of a divorce upon a residence in this state for 90 days, there was no requirement that the plaintiff seeking a divorce must have had a permanent intention of making this state his home. That opinion was followed in a number of subsequent cases, and remained the law until April 28, 1947, when it was overruled in the case of Cassen v. Cassen, 211 Ark. 582, 201 S. W. 2d 585. Under the authority of the Squire case many persons came into the state and obtained divorces here, who were in fact mere sojourners, and returned to their homes from whence they had come as soon as they had obtained the decree of divorce.

The policy of the law in granting divorces was reviewed in the Cassen case, and it was held that the doors of our courts in granting divorces should be opened only to persons who were bona fide residents of this state, not only when the decree of divorce was rendered, but also at the time when the suit was filed, and that one was not a bona fide resident of this state whose domicile was elsewhere. It was there said that "by bona fide residence, we mean the same as domicile". In other words, a domicile in this state was essential to maintain a suit for divorce. Be it so, we do not think the Cassen case is applicable here which is not a divorce case.

The case which we think does apply and is controlling here is that of Norton v. Purkins, Judge, 203 Ark. 586, 157 S. W. 2d 765, which turned upon and was controlled by Act 314 of the Acts of 1939. In that case the Cleveland Circuit Court had assumed jurisdiction of a personal injury suit when the injury had occurred in another county. Jurisdiction was defended upon the ground that the plaintiff was in fact a resident of Cleveland county where the suit was pending. It was held, under the facts there cited, that plaintiff was not a resident of Cleveland county and prohibition was granted. Hudson, the plaintiff, testified that he was born and reared in Cleveland county and that his home was in that county and that he farmed there from 1937 through 1939. He was injured January 14, 1939. It was shown however, that Hudson had secured employment in Ouachita county, where he was injured. That he had

rented a house in Ouachita county, in which he was living at the time of his injury, and that his child had been enrolled in a school in Ouachita county, although some of the household effects were in Cleveland county in a house which he had rented.

The facts stated parallel this case, except that here appellee has no home in Clark county, his household effects being stored in a house which had not been rented for residential purposes, but for storage purposes. He had rented a furnished apartment in Pulaski county, where he was living when injured, with his wife and his child who was later placed in school in Pulaski county. The opinion in the Norton case, supra, recites that: "He (the circuit judge) held as a matter of law that 'resided', as used in act 314, contemplates the place of one's permanent abode, and further held that Hudson's permanent abode and residence was Cleveland County." The opinion further states: "We cannot agree with the construction which the circuit judge placed upon the word 'resided' in act 314. We do not think that 'resided', as used in this act, necessarily means one's permanent abode or legal residence or domicile." The opinion then quoted the language used by Chief Justice Cockrill in the Krone v. Cooper case, herein above copied, thereby reaffirming what Justice Cockrill had said.

The opinion proceeds: "This court further said in the case of Smith v. Union County, 178 Ark. 540, 11 S. W. 2d 455: 'Residence, as used in § 9890, Crawford & Moses' Digest, means the place of actual abode, and not an established domicile or home to which one expects to return and to occupy at some future date.'

"In the case of Shelton v. Shelton, 180 Ark. 959, 23 S. W. 2d 629, this court, in referring to the case of Smith v. Union County, supra, and other cases, said: 'It will be seen from these cases that residence and domicile are not to be held synonymous; that a man may have a residence in one state or county, and he may be a nonresident of the state of his domicile in the sense that the place of his actual residence is not there'."

This case has not been overruled. On the contrary, it was cited with approval in the case of Twin City Coach Co. v. Stewart, 209 Ark. 310, 190 S. W. 2d 629. The opinion in the case of Twin City Coach Co. v. Stewart did not recite the facts as to residence, but did say that a petition for prohibition in that case had been overruled for the reason that a question of fact as to residence was involved and it would not be presumed that there would be an incorrect determination of that question when the case was tried. The point was reserved and was re-presented when the case was tried in the circuit court.

In the dissenting opinion by Justice McFaddin, in the Twin City Coach Co. case the following facts were recited. "Here are the facts: Miss Valeta Stewart became 18 years of age on March 7, 1944, and was killed in Fort Smith, Arkansas, on April 22, 1944. Her parents lived in Booneville, in Logan county; and she lived in the home with them until April 19, 1943, when she began working as a waitress at a cafe in Fort Smith, in Sebastian county. Miss Stewart and other girls had an apartment in Fort Smith, and paid the rent monthly. She kept her clothes in Fort Smith. She worked six days a week in the cafe and went to Booneville on her rest day 'nearly every week,' and took her soiled clothes to Booneville where she and her mother laundered them. During three weeks in early 1944 the cafe was closed for repairs; and Miss Stewart spent this time with her parents in Booneville. There is no record of any voting or payment of taxes."

There was thus a question of fact as to whether the injured party was a resident of Ft. Smith where she worked 6 days a week, or of Booneville where she rested on the seventh day and had her laundry done, and for that reason prohibition had been denied. It was thought by the dissenting Justice that the opinion in the Norton case, supra, had been weakened if not by implication overruled, which action met with his approval, as he thought too narrow a view of residence had been taken in the Norton case. However, the Norton case was not overruled, certainly not expressly, nor by implication,

as it was cited with approval in the majority opinion in the Twin City case.

In its last analysis the controlling question is whether residence and domicile are synonymous words, meaning the same thing. To hold that they are would overrule the Norton v. Purkins case, and the cases there cited, and numerous other cases to the contrary.

Norton v. Purkins has not been overruled by implication or otherwise; on the contrary, it was quoted with approval and followed in the case of Burbridge v. Redman, 211 Ark. 236, 200 S. W. 2d 492, an opinion subsequent to the Twin City case, supra.

The opinion in the Burbridge case makes it definitely clear that the Norton v. Purkins case was not overruled. We copy from the opinion in the Burbridge case the following statement: "The case affords an excellent example of the Court's determination that a plaintiff's contentions in respect of residence must be considered in connection with his conduct, from which an intent will be deduced.

"In the Norton-Purkins case Hudson had some household effects in Cleveland County, and had a temporarily rented residence; but by actions he had very definitely shown a purpose to reside elsewhere."

The opinion continues: "Another case in point is Twin City Coach Co. v. Stewart, Adm'r., 209 Ark. 310, 190 S. W. 2d 629. There was no disagreement as to the majority opinion that venue was in Logan County; but, since this opinion held that an instructed verdict for the defendant should have been given, facts connected with the decedent's actions affecting the contention that she had chosen Fort Smith as her residence were not detailed. The dissenting opinion, while expressing the majority's view that venue was in Logan County, elaborated upon evidence touching venue, and disagreed with the general result. (Shephard v. Hopson, 191 Ark. 284, 86 S. W. 2d 30.)"

Here appellee was injured in Pulaski county, which unquestionably was at the time of his injury his place

of abode, and that of his family, and Pulaski county was therefore the county in which he was residing at the time of his injury, within the meaning of Act 319. The Clark County Circuit Court was therefore without jurisdiction and the judgment must therefore be reversed and the cause dismissed without prejudice to the right to sue in Pulaski county.

LEFLAR, J., not participating.

ED. F. McFADDIN, Justice (Dissenting). With the greatest respect for, and deference to, the writer of the majority opinion and my colleagues who voted for it, I must nevertheless dissent; because, as I see it, there are two fundamental errors in the holding of the majority: first, it reverses the finding of the trial court on a disputed fact question; and second, it reverses the holding of this court on an adjudicated law question.

I. *The Fact Question.* It has long been the rule that when the trial judge decides a fact question, either interlocutory or preliminary to the trial, such decision will be sustained on appeal if there is any substantial evidence to support it. *Blass* v. *Lee,* 55 Ark. 329, 18 S. W. 186; *Metcalf* v. *Jelks,* 177 Ark. 1023, 8 S. W. 462; *Mosley* v. *Mohawk Lbr. Co.,* 122 Ark. 227, 183 S. W. 187; *Shephard* v. *Hopson,* 191 Ark. 284, 86 S. W. 2d 30; *Halliday* v. *Fenton,* 164 Ark. 11, 260 S. W. 961; *Scroggin & Co.* v. *Merrick,* 176 Ark. 1205, 5 S. W. 2d 344; *McElroy* v. *Underwood,* 170 Ark. 794, 281 S. W. 368.

In the case at bar, as preliminary to the trial on the merits, there was presented the opposition to venue. The trial court heard evidence on the venue issue, and upon highly conflicting evidence arrived at the conclusion that Ellis Lawrence could legally place the venue in Clark County as the county of his residence (under Act 314 of 1939). In view of the sharply disputed evidence as to the place of the plaintiff's residence, and in keeping with the cases cited, the majority should have affirmed the circuit court on the fact question. Instead, the majority has selected certain facts which to it seem sufficient to show no venue in Clark County, and has ignored facts

pointing to the opposite conclusion. This is not the correct test. This court on appeal should determine if the record shows substantial evidence to support the finding of the circuit court and, if so, then the factual decision should be affirmed. It is not a question of what we would hold were we the original triers of the fact; it is, whether there are any substantial facts to support the conclusion reached by the original trier of the facts, that is, the circuit court.

In addition to the testimony of the plaintiff that he had his residence in Gurdon, Clark County, Arkansas, on November 30, 1946, there was the testimony of other witnesses to the same effect. Here is some of the evidence:

1. Mrs. Lottie Lawrence, mother of the plaintiff, testified that the family had lived in Gurdon for 27 years prior to February, 1947; that Ellis Lawrence was living in the home with his parents in Gurdon when he went to the Army; that after his military service he returned to Gurdon; that he and his family lived in the home with the witness; that plaintiff worked at various places but always returned to Gurdon; that his household goods and all of his clothes—except what he was wearing—were in Gurdon at the time the plaintiff was hurt on November 30, 1946.

2. Mrs. Emily Lawrence, wife of the plaintiff, testified:

"Q. Had you moved your stuff from Gurdon up there?

A. No, sir, nothing but clothes up there.

Q. Did you have your household goods and kitchen things up there?

A. No, sir. All our housekeeping stuff and dishes and everything was at Gurdon.

Q. Did you have any canned goods?

A. Yes, sir.

Q. Did you move any of that to Little Rock?

A.  No, sir.

Q.  You kept it down there?

A.  Yes, sir.

Q.  What had you taken up there?

A.  Just our clothes.

Q.  You just took the clothes you needed up there?

A.  Yes, sir.

Q.  You hadn't moved up there then?

A.  No, sir.''

3.  Tom Wells, a disinterested witness, testified that he had known the plaintiff ''ever since he was a kid''; that just ''a week or so'' before plaintiff received the injuries here involved, Wells and the plaintiff had a conversation in Gurdon about a prospective business deal.  Here is Wells' testimony, *elicited by appellant on cross-examination:*

''A.  I didn't know they were gone.

Q.  Up until now?

A.  No, a while after he got hurt.

Q.  You learned it after he got hurt?

A.  No, I don't believe they had moved at that time. It was some time after that he was gone.

Q.  In the summer of 1946, do you know whether the family was there?

A.  I am sure they were living in Gurdon at that time.

. . . . .

Q.  You cannot testify he was living in Gurdon in 1946 then?

A.  I can testify he was there every week or two.

Q.  You cannot testify he lived there or had a home there?

A.  That is what he told me.

Q.  You never did consumate your plans about the freight line deal you talked about going into, did you?

A.  I never did go into the details about it.  The boy had always been honest with me, and I felt like it would be a good deal.

Q.  You discussed the plans about a possible business venture?

A.  Yes, sir.

Q.  But you didn't go into the business?

A.  No, sir, I heard he got hurt a week or so after that."

Without detailing all of the testimony, I submit that there was not only substantial evidence, but sufficient substantial evidence to support the holding of the trial court on the fact question of venue; and that the majority opinion does violence to our previous cases on this point.

II.  *The Law Question.*  The Venue Act (No. 314 of 1939) has resulted in prolific litigation, and our cases on venue are not altogether harmonious.  In *Norton* v. *Purkins*, 203 Ark. 586, 157 S. W. 2d 765, we took one view of "residence."  In *Twin City Coach Co.* v. *Stewart*, 209 Ark. 310, 190 S. W. 2d 629, we took—what to me, then seemed and still seems to be—an entirely different view of "residence."  Now in the present case we are turning away from the Twin City Coach case and thus, undoubtedly, leaving the bench and bar considerably at a loss as to what is "residence" within the purview of the Venue Act.  The facts in the case at bar bring it within the holding in the Twin City Coach case, and I submit that we should follow that case, and that the holding in the present case is at variance with it.

For the reasons herein stated, I respectfully dissent, and I am authorized to state that Mr. Justice MILLWEE joins in this dissent.