JULIAN HOGAN ET AL *v.* LYNN DAVIS

5-4459                                    422 S. W. 2d 412

Opinion delivered December 18, 1967

*Joe Purcell,* Atty. Gen; *Henry Ginger* and *Don Langston,* Asst. Atty. Gens., for appellants.

*Robert Shults,* for appellee.

J. FRED JONES, Justice. This appeal questions the trial court's interpretation of Ark. Stat. Ann. § 42-404 (Repl. 1964) as it relates to the residential qualifica-

tions of Lynn Davis to serve as Director of the Department of State Police. The statute provides:

> "The Director shall be chosen on account of his qualifications and fitness for the office, shall be of good moral character and *a resident of the State of Arkansas for at least ten years next preceding his appointment.*" (Emphasis supplied.)

On June 30, 1967, in response to a request from the Governor, the Attorney General issued an opinion holding that Mr. Davis did not meet the residential qualifications. The Governor nevertheless appointed Davis as Director on August 1. The Director of Administration, in view of the Attorney General's opinion, refused to approve the payment of Davis' salary.

Davis brought this action for a declaratory judgment finding him to be qualified to hold the office. By intervention the Attorney General sought Davis' ouster by quo warranto proceedings. The trial court held that Davis is legally qualified under the statute. After a careful study of the matter we are forced to the conclusion that the trial court erred in its decision.

The legislature declared in words too plain to be misunderstood that the Director of State Police must have been a resident of the State of Arkansas for at least ten years next preceding his appointment. There can be no doubt about the fact that the lawmakers, in requiring such an extended period of residence within the state, meant to make certain that the person chosen to be Director would be familiar by first-hand observation with the varied and complex problems of law enforcement that confront the State Police Department. No other convincing reason for the ten-year requirement has been brought to our attention.

The question is: Does Davis meet the residential test that the legislature—the final authority in the matter—has seen fit to impose? Upon this question the un-

disputed facts speak so strongly for themselves that hardly any comment by the court is necessary.

Lynn Davis was born in Arkansas in 1933 and lived here until March of 1960. At that time his employer in Texarkana, Arkansas, who was developing a residential subdivision a few miles across the state line in Wake Village, Texas, suggested that to promote the sale of lots Davis should buy a house in the subdivision and move into it with his family. Davis did so. From that time on, over a period of more than seven years, Davis did not make his home in Arkansas until he returned to this state to accept the appointment to the director-ship of the State Police in 1967.

In Wake Village, Texas, Davis terminated his employment with his original employer after about a year, but he took another job and continued to live in Wake Village until he sought and obtained a position with the F.B.I. in September of 1961. As a federal agent Davis lived with his family for periods of less than a year in Washington, D. C., in three cities in Illinois, and in Denver. In February, 1964, Davis moved to Rock Springs, Wyoming, where he stayed for about two and a half years. In Wyoming—the first state in which he had resided for more than a year since leaving Texas —Davis expressed his intentions about his residence so emphatically as to leave the matter not seriously open to doubt. On May 13, 1966, Davis qualified to vote in Wyoming by appearing before the registrar and making a written statement under oath that he had been a resident of the state for more than a year and was a qualified elector in the state. He did not actually vote in Wyoming, as he admits he intended to do; for he was transferred to an F.B.I. position in California and remained there until he came back to Arkansas to accept the appointment to the office of Director of the State Police Department.

To sum up, according to the undisputed proof Davis and his family lived outside Arkansas continuously for

more than seven years immediately preceding the appointment now in dispute. During all that time Davis' only real ties with Arkansas lay in the fact that his parents lived here, that he owned a house in Texarkana all along (though not always the same house), and that he intended to return to Arkansas when he could find a job here that would enable him to support his family. During his seven-year absence from the state Davis did not attempt to vote in Arkansas, did not pay poll tax here, did not pay the state income tax that is levied on residents of the state, and, of course, did not actually make his home in Arkansas.

In a case as clear-cut as this one we need not enter upon an extended discussion of the technical distinctions between "residence," which ordinarily means physical presence within the jurisdiction (with, of course, customary absences upon business, vacations, and the like), and "domicile," which differs from mere "residence" by including the subjective intent to maintain one's permanent home in the jurisdiction. The distinction between residence and domicile has been made, for example, in such cases as *Krone* v. *Cooper,* 43 Ark. 547 (1884); *Jarrell* v. *Leeper,* 178 Ark. 6, 9 S. W. 2d 778; *Missouri Pac. R.R.* v. *Lawrence,* 215 Ark. 718, 223 S. W. 2d 823; *Norton* v. *Purkins, Judge,* 203 Ark. 586, 157 S. W. 2d 765; *Harris* v. *Textor,* 235 Ark. 497, 361 S. W. 2d 75; *Husband* v. *Crockett,* 195 Ark. 1031, 115 S. W. 2d 882; *Smith* v. *Union County,* 178 Ark. 540, 11 S. W. 2d 455; *Shelton* v. *Shelton,* 180 Ark. 959, 23 S. W. 2d 629; and other cases far too numerous to mention.

Even if we agreed with the trial court that our statute required only "domicile," still appellee could not prevail. Disregarding his move to Texas which does not constitute a necessary private business absence under Article 19 § 7, his family lived with him for two and one-half years in Wyoming where he declared his intentions as to residence under oath. In order to be a qualified elector in Wyoming, one must have been a resi-

dent of the state for at least one year and of the county in which he proposes to vote for at least sixty days. Article 6, § 2, Constitution of Wyoming; Wyoming Statute, § 22-118.3j. Residence under the Wyoming election statute is defined as that place in which a person's habitation is fixed and to which, whenever he is absent, he has an intention of returning. Wyoming Statute, § 22-118.3k. The last cited subsection of the statute also provides that a person must not be considered to have gained a residence in any county into which he comes for a temporary purpose merely, without the intention of making such county his home. This action of appellee completely negates any vague and indefinite expressions of a desire to return to Arkansas, insofar as determination of place of domicile is concerned.

The point of controlling importance, which cannot possibly be swept under the judicial rug, is that the legislature meant for the Police Director to have actually lived in the state for ten years next preceding his appointment. Lynn Davis lived outside the state for more than seven of those ten years. He is thus not qualified to hold the office.

Reversed and remanded for the entry of a judgment consistent with this opinion.

WARD, J., dissents.

PAUL WARD, Justice, dissenting. Although the issues here raised cannot be easily resolved, I am not in agreement with the result reached by the majority which holds that Davis was neither a *resident* nor a *domiciliary* of Arkansas.

It is necessary therefore to examine the meaning of both of the emphasized words in construing Ark. Stat. Ann. § 42-404 (Repl. 1964).

*Residence.* This Court's former opinions demonstrate that the word "residence" is subject to construction and that it has a flexible meaning depending upon the circumstances involved. See: *Wheat* v. *Smith,* 50 Ark. 266, 7 S. W. 161; *State* v. *Red Oak Trust & Savings Bank,* 167 Ark. 234, 267 S. W. 566; *Mutual Benefit Health and Accident Association* v. *Kincannon,* 202 Ark. 1128, 155 S. W. 2d 687, and *Cassen* v. *Cassen,* 211 Ark. 582, 201 S. W. 2d 585. Other cases could be cited. The cases also reveal that the words "residence" and "domicile" are sometimes interchangeable, depending on the context in which they are used.

The question to be resolved, therefore, is: Did the legislature mean that Davis must have been actually present in this State for ten years, or that he must have been a "domicile" of this State for ten years? All these matters were properly considered by the trial judge, going to the intent of the legislature.

The majority cite no opinion of this Court, and I know of none, that has ever construed the word "resident" as used in the statute under consideration. The opinion does mention several cases to support it, but, I submit, a close examination reveals that none of them do so.

(a) The *Krone* case pertains to Attachment, and no statute is cited. It does refer to a Missouri opinion as holding "domicile" and "residence" have the same meaning.

(b) The *Jarrel* case also deals with Attachment, citing the *Krone* decision. It does contain these significant statements: "The question of residence is a mixed one of law and fact." The Court, referring to the *Krone* case, said: "The court recognized that the words 'resident' and 'nonresident' as used in our statute relating to attachments, had never been defined by this Court..."

(c) The *Missouri Pacific* case dealt with the question of venue under Act No. 314 of 1939. The word used in that Act is ''resided''.

(d) The *Norton* case construed the same Act of 1939 above mentioned, which used the same word, ''resided''.

(e) The *Harris* case again construed the word ''resided''.

(f) The *Husband* case construed the words ''usual place of abode'' as used in Ark. Stat. Ann. § 27-330 (Repl. 1962).

(g) The *Shelton* case construed the word ''resided'' as used in Ark. Stat. Ann. § 62-203. Webster describes the word ''reside'' as remain, stay, be present. The same definition is given by Black's Law Dictionary.

It must be concluded from what is pointed out above that the majority rely on no pertinent decision of this or any other court to sustain its conclusion. If the legislature, in enacting section 42-404, meant that Davis must remain or stay in Arkansas for ten years it would have used the word ''reside'' as it had done in so many other instances. When it used the word ''residence'' the legislature, in my opinion, meant Davis must be domiciled in Arkansas for ten years, especially so, being aware of the Arkansas Constitution, Article 19, § 7, which reads:

''Absence on business of the State or of the United States, or on a visit or on necessary private business, shall not cause a forfeiture of residence once obtained.''

However, the majority say Davis was not a domicile of Arkansas. Again, I disagree. It must be conceded, under the undisputed facts in this case, that Davis was

at all times away from Arkansas on business either for the United States or on private business.

In view of what has heretofore been said, I submit there is substantial evidence to support the trial court's finding that the legislature meant for the Director of Police to be a legal resident or domicile of this State. However since the majority hold Davis was not a *domicile* of Arkansas, that issue must now be examined.

*Domicile.* Was Davis a domiciliary of Arkansas? That question can only be answered in the affirmative when fair consideration is given to our own unchallenged definition of "domicile" and to the undisputed facts in this case.

In the case of *State* v. *Red Oak Trust & Savings Bank,* 167 Ark. 234, 267 S. W. 566, we find this statement:

> "To effect a change of residence or domicile there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence in another place or jurisdiction, with the intention of making the last-acquired residence a permanent home."

An examination of the undisputed "facts" in this case is revealing and convincing.

(a) It is not, and cannot be, disputed that Davis was once a domiciliary and legal resident of this State. He was born here in 1933; he married here in 1952; he went to school and taught school in this State; he owned (and still owns) a home here; his parents and grandparents were domiciled here.

(b) We now look to see if Davis did actually (1) abandon his established domicile with the intent not to return, and (2) to acquire a new domicile with the in-

tent to make it a permanent home? Based on the facts presently set out I submit that both questions must be answered in the negative.

(1) Davis and his wife both testified they did not abandon their home or domicile in Arkansas, but, to the contrary, they stated they at all times intended to return. There is no testimony to the contrary, the trial judge so found, and I know of no reason for reversing the holding of the trial judge on that feature of the case.

(2) Did Davis acquire a legal residence, domicile, or permanent home elsewhere? I submit the answer must be "no".

I concede appellant's right to argue, in this connection, that Davis' "actions" speak louder than his "words". In doing so, they must rely on the Texas and the Wyoming incidents to show his "actions". Consequently, it is necessary to examine the record relative to those "incidents".

*Texas.* In 1960, while Davis was living in his hometown of Texarkana, Arkansas, he took a job to sell houses just across the state line in Texas. He moved there and bought a house at the suggestion of his employer, because he thought it would help to sell more houses. He lived and worked there about one year when he secured a job with the F. B. I. He tried to sell the house when he left but could not find a buyer. Relative to this incident he testified: "When I moved in this house in Wake Village, Texas, I did not have any intention of making this my permanent home. I wanted to get back to Texarkana, Arkansas, as soon as I could." There is no testimony to the contrary, and I submit the trial judge was fully justified in believing Davis.

*Wyoming.* After Davis was sent by the F. B. I. agency to several other states he was assigned to duty

at Rock Springs, Wyoming. There he *rented* a house where he remained approximately two years. He left there in the summer of 1966, on orders, and went to California where he lived in two different places. Davis' undisputed testimony was that he never intended to make Wyoming his home, but always was trying to get the F. B. I. to send him back to Arkansas. Again, this testimony satisfied the trial judge, and it satisfies me.

Appellants lay great stress on the fact that Davis registered in Wyoming to vote for a friend, to show he intended to make Wyoming his domicile or permanent home. The trial judge did not think, and I do not think any such intention is reasonably deducible. Davis had been a resident of Wyoming for more than a year, and he could have reasonably concluded that this gave him a legal right to vote. Wy. Stat. § 22-133 reads, in pertinent part, as follows:

"Every citizen of the United States of the age of 21 years and upward who has *resided* in the state one year . . . and who has complied with the registration laws . . . shall be entitled to vote . . . ." (Emphasis ours.)

It is admitted by everyone that Davis had "resided" in Wyoming one year, and therefore had a perfect right to register and to vote. How anyone can conclude, from that incident, Davis did, or could have meant to, abandon his domicile in Arkansas is beyond my comprehension.