COLEY v. AMSLER, JUDGE ON EXCHANGE.

5-987                                                            290 S. W. 2d 840

Opinion delivered June 4, 1956.

*Lee Miles, Ed E. Ashbaugh* and *Wright, Harrison, Lindsey & Upton,* for petitioner.

*J. F. Holtzendorff* and *Frances D. Holtzendorff,* for respondent.

J. SEABORN HOLT, Associate Justice. This is an original proceeding by petitioner, Frank Coley, for a writ of prohibition. On July 4, 1955, an automobile owned and driven by Naomi Faupel, and in company with her mother, collided with a truck driven by appellant, Frank Coley, in Lonoke County. August 22, 1955, Naomi Faupel brought suit against Coley in the Circuit Court of Prairie County based on personal injuries and property damage growing out of the mishap. Coley, after having been duly served with summons, appeared specially and filed

motion to quash the summons, and that the complaint be dismissed, on the ground that venue in Prairie County was improper since the collision happened in Lonoke County and Miss Faupel (he alleged) was not a resident of Prairie County at the time of the mishap. On a hearing, at which both parties offered testimony, the trial court overruled appellant's motion and on February 29, 1956, appellant filed in this court his petition for writ of prohibition seeking to prohibit the Prairie Circuit Court from proceeding further in the case. Appellant says: ''The only question presented by this Petition is whether or not the plaintiff was a resident of Prairie County, Arkansas, at the time the accident giving rise to her complaint occurred.''

The venue in this case and in similar litigation is controlled by § 27-610 and 27-611 Ark. Stats. 1947 which provide: ''All actions for damages for personal injury or death by wrongful act shall be brought in the county where the accident occurred which caused the injury or death or in the county where the person injured or killed resided at the time of injury . . . Any action for damages to personal property by wrongful or negligent act may be brought either in the county where the accident occurred which caused the damage or in the county of the residence of the person who was the owner of the property at the time the cause of action arose.''

The testimony discloses that Naomi Faupel, single and now 25 years of age, was reared in Hazen, Prairie County. Her parents have continued to reside in their home in Hazen. After finishing high school in Hazen and a business education in Little Rock, Naomi Faupel returned to Hazen and worked for a construction company and a local bank until 1953. In October 1953, she, after having pursued a correspondence course to qualify for a position with an airline company, went to Kansas City, Missouri to take an additional six week's course of study, which was required. Following the completion of her course of study she applied for a position with the airlines, but finding no opening she accepted her present position with an insurance company, in order to support herself, but only on a ''temporary basis.'' Her applica-

tion with the airlines was still pending. While working in Kansas City, she testified that she continued to claim Hazen as her home — "Q. And Hazen is your parents' home? A. And my home too." A substantial amount of her clothing, personal possessions, including her hope chest, silver and other treasures, were kept in her home in Hazen and that she maintained in Kansas City only such clothing as the seasons required. She returns to Hazen as often as she can on week-ends and on holidays — "Q. How often do you come back to see your mother and dad at Hazen? A. About every two months." She further testified that her visits to them were "from a week to ten days or two weeks, whatever time she has;" that on these visits she brings home her clothes and things like that and takes back some; that she had been in Hazen two days when the mishap here in question occurred and that she was going back to Kansas City to work and remain until Thanksgiving, when she would again be home. She had also been home thirty days before this on Labor Day. She continued to maintain her church membership in a church in Hazen, her membership in a riding club, claims interest in a horse which she and her father keep at Hazen, and maintains burial insurance at Hazen. She cast her maiden vote in Prairie County in 1951 and has voted in each election in that county since, voting an absentee ballot in 1954, and has purchased her poll tax for the year 1955 in Prairie County. Her name appears on the published and official list of qualified electors of Prairie County for each of these years. She has never voted in Missouri or any other place except Prairie County. She owned an Arkansas Driver's License for the years 1950, 1951, 1952, 1953 and 1954. She did not own an Arkansas Driver's License for the year 1955, but owned a Missouri Driver's license for that year. She paid no State Income Tax either in Missouri or Arkansas. The 1955 Hazen Telephone Directory shows the telephone at the Faupel residence listed in Miss Naomi Faupel's name.

Appellant stoutly contends that the undisputed testimony shows that Miss Faupel was not a resident of Prairie County at the time of the collision, but was in

fact a resident of Kansas City and that we must so declare as a matter of law. We do not agree. We do not think the evidence as to Miss Faupel's residence was wholly undisputed. The principles of law announced in our comparatively recent case of *Twin City Lines, Inc.* v. *Cummings, Judge,* 212 Ark. 569, 206 S. W. 2d 438, are controlling here. As indicated, the question of the trial court's jurisdiction turns upon a fact question, whether Naomi Faubel was a resident of Prairie County at the time of the mishap. We cannot say from the above testimony that the question of her residence was undisputed, and was such that the only inference to be drawn therefrom was that she was, in fact, a resident of Kansas City, as the petitioner here contends. We said in the *Twin City Lines* case above that: ''The fact of deceased's residence at the time of her death is, therefore, a controverted and contested question which the trial court was called upon to determine from the testimony adduced on that issue. This court has repeatedly held that where the jurisdiction of a trial court depends upon a question of fact, a writ of prohibition will not lie . . . The office of the writ of prohibition is to restrain an inferior tribunal from proceeding in a matter not within its jurisdiction; but it is never granted unless the inferior tribunal has clearly exceeded its authority and the party applying for it has no other protection against the wrong that shall be done by such usurpation. When the court has jurisdiction over the subject-matter and the question of its jurisdiction of the person turns upon some fact to be determined by the court, its decision that it has jurisdiction, if wrong, is an error, and prohibition is not the proper remedy. . . . We do not regard the testimony as to deceased's residence as being wholly undisputed and certainly the legal effect of such facts is a matter that is highly controversial . . . Probably in most instances the facts upon which jurisdiction may rest or be determined are controverted. In most other instances they might be controverted, that is to say, there is the possibility of the facts being disputed. In either event the matter is one that must be determined by the trial court, and in the proper exercise

of the trial court's functions we do not interfere by prohibition. We might differ most seriously from the view taken by the trial court, but if we think the trial court erred, we can correct that only upon appeal." See also *Twin City Coach Co. v. Stewart, Administrator,* 209 Ark. 310, 190 S. W. 2d 629.

We conclude, therefore, that a disputed question of fact was presented and the Circuit Judge had the power in the circumstances to determine the question of the residence of Naomi Faubel, and even though he might have done so erroneously, petitioner has an adequate remedy by appeal and prohibition will not lie. The writ is, therefore, denied.

Justice WARD dissents.

PAUL WARD, Associate Justice, Dissenting. In my opinion the Writ asked for by petitioner should be granted. I cannot agree with the majority opinion for the reasons hereinafter stated.

The majority opinion is based on the holding in the *Twin City Lines, Inc.,* case. In the cited case the court itself said: "We do not regard the testimony as to deceased's residence as being wholly undisputed . . ." In order to bring the issue in the present case under consideration within the provisions of the *Twin City* case, the majority must, of course, find that the testimony and facts in the case are disputed, i.e. not undisputed. This is exactly what the majority has done in these words: "We do not think the evidence as to Miss Faupel's residence was wholly undisputed." I disagree with this finding by the majority, for two reasons: (a) First, the majority points out no disagreement and no conflict in the testimony, and (b) In the second place, the respondent specifically refutes the majority's finding. From the respondent's brief, at page 13, I quote: "We agree with the petitioner that the facts involved herein are not in dispute. . . ."

Since, therefore, no disputed question of fact was presented to the trial court or is presented to this court, it follows that only a question of law was presented below

and is now presented to this court. That question is: Do the undisputed facts in this case show Naomi Faupel to have been a resident of Prairie County or a resident of Kansas City? Briefly the undisputed facts are these: For two and one-half years (previous to the accident) Naomi Faupel had worked, lived and resided in Kansas City, Missouri, except for a visit, about once every two months, to her parents in Prairie County.

In the outset it is important not to confuse *residence* with *domicile.* Our courts have uniformly made a clear distinction between the two. This distinction, concisely stated, is that *residence* means a place where one lives or resides and *domicile* refers to one's permanent abode or legal residence or domicile. See *Norton* v. *Purkins,* 203 Ark. 586, 157 S. W. 2d 765; *Smith* v. *Union County,* 178 Ark. 540, 11 S. W. 2d 455, and *Shelton* v. *Shelton,* 180 Ark. 959, 23 S. W. 2d 629.

The undisputed facts in this case show too clearly to admit of argument or refutation that Naomi Faupel resided in Kansas City at the time of the accident and had been residing there for two and one-half years.

Because Naomi Faupel had a drivers license and a poll tax, and maintained a telephone in her name in Prairie County, is some indication, of course, that she meant to maintain Prairie County as her legal residence or permanent abode [although she herself said she had no present intention of returning to Prairie County], yet the incidents above mentioned are in no way incompatible with her maintaining her residence in Kansas City. Everyone is familiar with fine examples of the difference between maintaining a residence and a domicile. It can hardly be denied that all of the Senators and Congressmen together with all of their assistants from this State reside in Washington D. C. while the Congress is in session, but all of the parties mentioned would be the first to deny that their domiciles and legal residences are in Washington.

Ark. Stats. § 27-610 provides that when a person is injured, such as Naomi Faupel was in this case, that

person has a right to bring an action in the county where he "resided at the time of the injury."

Heretofore the word residence has had a well defined meaning. Black's Dictionary, 4th Edition defines residence as "a factual place of abode. Living in a particular locality." The new Webster's International Dictionary, Second Edition defines residence in this way: "Act or fact of abiding or dwelling in a place for some time; act of making one's home in a place." It appears to me that the majority opinion has thrown into utter confusion the common ordinary meaning of the word *residence* and, consequently, the meaning of the statute above quoted.