Eddie L. BREWSTER et al *v.* Vannette W. JOHNSON

76-276                                            541 S.W. 2d 306

Opinion delivered October 4, 1976

*Dickey, Drake & Bynum,* for appellant.

*Coleman, Gantt, Ramsay & Cox,* by: *William C. Bridgeforth,* for appellee.

CONLEY BYRD, Justice. The trial court found as a fact that appellant Eddie L. Brewster had not been a resident of District 54 (being a part of Jefferson County) for one year next preceding the date of election as required by Article 5, § 4 of the Arkansas Constitution and directed the Secretary of State to omit appellant's name from the official list of candidates to be certified to the Jefferson County Election Commission. For reversal appellant contends that the "durational requirements" of Article 5, § 4 of the Constitution of Arkansas are invalid under the Equal Protection Clause, abridge his fundamental right to travel, and infringe his fundamental right to vote as possessed by the electorate of the State. He also contends that the trial court erred in holding that he had not been an elector of District 54 for the required time.

The record shows that appellant was a student at the University of Arkansas at Pine Bluff from April 15, 1972 through the summer term of 1976. When he entered the University he listed his permanent mailing address as 608 Spruce Street, Augusta, Woodruff County, Arkansas, and he continued to do so through the Spring semester, registration which was held in January 1976. On May 31, 1976, while registering for the Summer semester he changed his permanent mailing address to 815 West Barraque Street, Apartment E., Pine Bluff, Arkansas. The same information appears in his own handwriting in his applications for financial aid in attending the University. It is also admitted that from May 30, 1972 through March 9, 1976 appellant was a registered voter and voted in Woodruff County in every election up through and including the March 9, 1976 election. Appellant first transferred his voter registration to Jefferson County on March 18, 1976. He has paid no taxes nor assessed any personal property taxes in Jefferson County until August 13, 1976. The petitions by which appellant seeks to run as an independent candidate for representative from District 54 were filed with the Secretary of State on April 6, 1976. It was stipulated that appellant would testify that he considered himself a resident since 1972.

In reviewing the findings of fact by the trial court on appeal we must affirm them if there is any substantial evidence to support such findings. On the record before us we cannot say that there is no substantial evidence to support the trial court's finding that appellant was not a resident of District 54 for one year before the date of election.

For his contention that Article 5, § 4 contravenes the United States Constitution appellant principally relies upon *Dunn* v. *Blumstein,* 405 U.S. 330, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972), and the line of cases from California following *Dunn* v. *Blumstein, supra,* such as *Thompson* v. *Mellon,* 9 Cal. 3d 96, 107 Cal. Rptr. 20, 507 P. 2d 628 (1973) and *Smith* v. *Evans,* 42 Cal. App. 3d 154, 116 Cal. Rptr. 684 (1974).

Article 5, § 4 of the Arkansas Constitution provides:

> "No person shall be a Senator or Representative who, at the time of his election, is not a citizen of the United States, nor any one who has not been for two years next preceding his election a resident of this State, and for one year next preceding his election a resident of the county or district whence he may be chosen. Senators shall be at least twenty-five years of age and Representatives at least twenty-one years of age."

Requirements similar to those in the Arkansas Constitution, *supra,* can be found in the Constitutions of nearly every State, except Nevada. Only five states require less than a year. See table set out in *Hayes* v. *Gill,* 52 Hawaii 251, 473 P. 2d 872 (1970). The United States Constitution provides that "no person shall be a representative who shall not have . . . been seven years a citizen of the United States. . . ." [Art. 1, § 2(2)] and a like provision of nine years is required of a Senator, Art. 1, § 3(3).

*Dunn* v. *Blumstein, supra,* involved durational residence laws for voter qualification. Before addressing itself to the merits of the durational residence law, Mr. Justice Marshall in writing for the majority of the court said:

> "To decide whether a law violates the Equal Protection Clause, we look, in essence, to three things: the

character of the classification in question; the individual interests affected by the classification; and the governmental interests asserted in support of the classification. . . . In considering laws challenged under the Equal Protection Clause, this Court has evolved more than one test, depending upon the interest affected or the classification involved. First, then, we must determine what standard of review is appropriate. In the present case, whether we look to the benefit withheld by the classification (the opportunity to vote) or the basis for the classification (recent interstate travel) we conclude that the State must show a substantial and compelling reason for imposing durational residence requirements."

With respect to filing fee requirements for qualification of a candidate in a statutory party primary, Chief Justice Burger in speaking for the Court in *Bullock* v. *Carter,* 405 U.S. 134, 92 S. Ct. 849, 31 L. Ed. 2d 92 (1972), discussed the determination of the test to be applied in this language:

"The initial and direct impact of filing fees is felt by aspirants for office rather than voters, and the Court has not heretofore attached such fundamental status to candidacy as to invoke a rigorous standard of review. However, the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters. Of course, not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review. *McDonald* v. *Board of Election,* 394 U.S. 802, 89 S. Ct. 1404, 22 L. Ed. 2d 739 (1969). . . . "

The California Courts, *Thompson* v. *Mellon, supra,* have taken the position that in determining the validity of durational candidate qualifications to cities, the cities must show the same substantial and compelling reason for imposing durational residence requirements to candidate qualification that the United States Supreme Court applied to voter qualification. In applying that test to the durational qualifications, the court struck down a two year durational requirement for candidates for the office of city councilman. Justice Mosk, in a concurring opinion went farther by stating:

". . . indeed, all such durational residential requirements should be rejected because they can be justified solely on a paternalistic theory that the citizens of yesterday knew what is best for the governance of the citizens of today and tomorrow." In a dissent Justice Burke stated his views of the test to be applied as follows:

> "Initially, we must determine what standard governs in measuring the constitutionality of various restrictions imposed upon the right to run for public office. The latest pronouncement of the United States Supreme Court indicates that the traditional 'rational basis' test may be sufficient in the absence of a discrimination based upon wealth or some other 'suspect' classification. (see *Bullock* v. *Carter,* 405 U.S. 134, 142-144, [31 L. Ed. 2d 92, 99-100, 92 S. Ct. 849], applying a 'close scrutiny' test to invalidate a Texas filing fee scheme which tended to exclude from the ballot candidates unable to afford the substantial fees at issue therein.) The residence requirement at issue may operate to restrict the field of candidates from which voters might choose, but, as stated in *Bullock,* 'The existence of such barriers does not of itself compel close scrutiny.' (*Id.* at p. 143 [31 L. Ed. 2d at p. 100].)"

Following the decision in *Thompson* v. *Mellon, supra,* the California Court of Appeal, Third District, in *Smith* v. *Evans, supra,* held invalid a one year durational residence requirement for city council candidates. In so doing the court stated:

> "It is unnecessary to decide here whether the relatively stringent 'compelling interest' test or the relative mild 'reasonable necessity' test is appropriate. Even by the measure of the latter, the one-year durational residence requirement for local candidates fails. Its preference for settled inhabitants and its denial of political opportunity to new inhabitants is restrictive beyond its reasonable necessity for achieving legitimate public ends."

Other courts in considering durational residence requirements of candidates for state offices contained in the state's constitution have arrived at a different result. See

*Gilbert* v. *State,* Alaska, 526 P. 2d 1131 (1974), [state senator];
*Walker* v. *Yucht,* (D.C. Del. 1972), 352 F. Supp. 85 [office of
state general assembly]; *Hayes* v. *Gill,* 52 Hawaii 251, 473 P.
2d 872 (1970), [state representative]; *State ex rel Gralike* v.
*Walsh,* Mo. 483 S.W. 2d 70 (1970), [state senator]; and
*Chimento* v. *Stark,* (1973 D.C. N.H.) 353 F. Supp. 1211, affd.
414 U.S. 802, 94 S. Ct. 125, 38 L. Ed. 2d 39 [Governor of New
Hampshire]. In so doing, all of these courts except Hawaii
and a concurring opinion in *Chimento* v. *Stark, supra,* have
applied the "compelling state interest" test or at least given
lip-service to the test.

When one considers that durational residence re-
quirements, usually considered in terms of citizenship or
domicile, are required in practically all of the State
Constitutions for state officers and that seven and nine years
citizenship is required in the United States Constitution for
Representatives and Senators respectively, we cannot agree
with the statements in *Thompson* v. *Mellon, supra,* that such
durational requirements "can be justified solely on a pater-
nalistic theory that the citizens of yesterday know what is best
for the governance of the citizens of today and tomorrow." In
fact history records that the seven year provision in the United
States Constitution Article 1 § 2(2) was inserted by the
Constitutional Convention because it was thought that three
years, as originally proposed, was not enough time for secur-
ing that local knowledge which ought to be possessed by a
congressman, *The Constitution of the United States* by *David K.
Watson,* Volume I, page 146. The State of Arkansas has had
five Constitutions, the Constitution of 1836, the Constitution
of 1861, the Constitution of 1864, the Constitution of 1868 and
the present Constitution of 1874, all of which have carried the
same durational qualifications for candidates to the State
Legislature. In fact the 1868 Constitution was approved by
Congress June 22, 1868, 15 Stat. 72, Ch. 69. When viewed
with this historical setting and the almost unanimous require-
ment in every state of this Nation, we do not believe that such
durational requirements should be considered as "suspect"
classification or as "invidious" discrimination. If the
classification of State officers is neither "suspect" nor "in-
vidious" then of course the "rational basis" test when applied
to the classification under consideration would not invalidate
such requirements.

Neither do we interpret the United States Supreme Court decisions as requiring the "Compelling State Interest" test. When viewed by the three tests stated by Mr. Justice Marshall in *Dunn* v. *Blumstein, supra,* we find:

1. The character of the classification is contained in practically every state constitution and a corresponding durational requirement is set forth in the Federal Constitution.

2. The individual interests affected by the classification are the exception rather than the rule. Nearly every community, figuratively speaking, has had its feuds between the Martins and the McCoys that have been settled by unwritten and unpublished compromises — such feuds should not be renewed through ignorance.

3. Furthermore to hold such classification invalid to protect the interest of the few, who fall in the exception, would permit the political bosses in the more wealthy districts of the State of keep the political leaders in the less wealthy or rural districts busy with their home chores through hired agitators as candidates while the wealthy political bosses concentrated their efforts on state wide political races.

Everyone who has learned to drive an automobile has already learned the philosophical lesson — *i.e.* there is a lot of difference between talking about something and doing something. The same philosophy applies to government. It has been less than two decades since headlines in the newspapers of Boston, Massachusetts were telling the citizens of Little Rock, Arkansas, how they should handle their school racial problems. But if one can believe what he presently reads in the newspapers, it seems that some of the good citizens of Boston are now having trouble practicing what was preached to Little Rock during the 1957 Integration Crises. Stated in the words of the old courthouse political wag it seems that "A man ought to wear out at least one pair of shoes in a community before he undertakes to speak for it or tell it how to run its business."

Now obviously it would appear that the "reasonable basis" test ought to be applied to reasonable durational qualifications for state officers. But if the United States

Supreme Court should subsequently decide that the "compelling state interest" is the proper test we think the foregoing discussion is sufficient to satisfy even that test in upholding the validity of durational qualifications of a candidate.

Affirmed.

HARRIS, C.J., concurs in the result.

We agree: HOLT and ROY, JJ.