# Don JENKINS and Republican State Committee *v.*
## Honorable David BOGARD

98-1303 980 S.W.2d 270

### Supreme Court of Arkansas
### Opinion delivered December 10, 1998

*John Wesley Hall*, for appellants.

*Compton, Prewett, Thomas & Hickey, P.A.*, by: *Robin J. Carroll*, for appellee.

*Winston Bryant*, Att'y Gen., by: *Warren Readnour*, Ass't Att'y Gen., for appellee.

David Newbern, Justice. This is an appeal from a writ of mandamus and declaratory judgment issued by appellee Circuit Judge David Bogard. The issues presented concern election procedures. Don Jenkins was certified by the Secretary of State as the Republican candidate for state representative, District 10, in the November 3, 1998 general election. The Democratic Party of Arkansas sued to have Mr. Jenkins's name removed from the ballot or, alternatively, to prohibit the counting of votes cast for Mr. Jenkins. Individual residents of District 10 were later substituted as plaintiffs. It was contended that Mr. Jenkins was ineligible because he had not resided in District 10 for one year as required by Ark. Const. art. 5, § 4. Judge Bogard agreed and issued his order striking Mr. Jenkins's name from the ballot on October 29, 1998.

We stayed Judge Bogard's order and granted an expedited appeal. *Jenkins v. Bogard*, 334 Ark. 645, 980 S.W.2d 548 (1998). Mr. Jenkins's name thus remained on the ballot, but he lost the election. Kenneth Chitwood and Terry Wells, the substituted plaintiffs, move to dismiss Mr. Jenkins's appeal on the ground that the issues are moot because the election has been held and our decision will have no practical effect.

In *McCuen v. McGee*, 315 Ark. 561, 868 S.W.2d 503 (1994), a case very similar to this one, we chose not to address the issues presented because of mootness resulting from the fact that the election in question had been held and nothing we might do would change the result. In that case, however, we noted that "appellant has not addressed that question [the public interest] except insofar as his own interest is concerned and we are not persuaded that an exception [to the mootness doctrine] should be made in this case." *McCuen*, 315 Ark. at 564, 868 S.W.2d at 505. In this case, the contrary is true. Mr. Jenkins and the State Republican Committee have clearly stressed the importance of having the issues presented here decided for the benefit of orderly procedures for challenging the appearances of names on the ballot

in future elections, and we agree. We therefore deny the motion to dismiss because the issues presented are ones likely to recur, *Quinn v. Webb Wheel Products*, 334 Ark. 573, 976 S.W.2d 386 (1998), and particularly because issues concerning election procedure are of public importance and should be resolved so that errors in election procedures, if any are held to have occurred, will not be repeated. *See Wright v. Keffer*, 319 Ark. 201, 890 S.W.2d 271 (1995).

The Secretary of State certified Mr. Jenkins's name to the election boards of Crawford and Franklin Counties on September 14, 1998. The mandamus and declaratory judgment petition was filed September 30, 1998, and Judge Bogard scheduled a hearing for October 5, 1998. Mr. Jenkins was not, however, served with process until October 20, 1998, and a new hearing was set for October 28, 1998.

The theme of the appeal by Mr. Jenkins and the State Republican Committee is that Judge Bogard's order was tardy and that, although it was stayed, the order caused Mr. Jenkins to lose votes because of confusion of the voters about whether Mr. Jenkins remained a candidate and whether votes cast for him would be counted. We are asked whether such "last minute" pursuit of the writ and declaratory judgment, and the order that was issued, were appropriate in view of the lateness of the filing of the petition and the failure of Judge Bogard to have a hearing upon it within two to seven days of its filing as required by Ark. R. Civ. P. 78(d).

██ We decline to address the question whether Judge Bogard abused his discretion in entertaining the petition that was filed just over a month prior to the election. We do so because the argument was not presented to Judge Bogard. We do not address arguments made for the first time on appeal. *Dellinger v. First Nat'l Bank of Russellville*, 333 Ark. 460, 970 S.W.2d 223 (1998). An exception to that rule is that we will address for the first time on appeal an argument that the trial court lacked jurisdiction of the subject matter with which it has dealt. *See Cigna Ins. Co. v. Brisson*, 294 Ark. 504, 744 S.W.2d 716 (1988); *Roy v. International Multifoods Corp.*, 268 Ark. 958, 597 S.W.2d 129 (1980).

Mr. Jenkins concedes that he did not present the delay-in-filing issue to Judge Bogard, and he makes no argument that the issue is one of subject-matter jurisdiction. He also concedes that he did not object to Judge Bogard's holding the hearing more than seven days after the petition was filed; however, he argues that Judge Bogard lost jurisdiction of the subject matter because of the violation of the requirement found in Rule 78(d) that a hearing be held neither less than two nor more than seven days after the petition for mandamus and declaratory judgment is filed. Despite the mootness of the issue, we choose to decide two issues we consider to be significant, *i.e.*, the issue concerning the effect of a violation of Rule 78(d) and the issue concerning that which is necessary to establish residency.

We hold that the Circuit Court did not lose jurisdiction of the subject matter as a result of the violation of Rule 78(d) and that it was thus necessary for Mr. Jenkins to have objected in order to have preserved that issue for appeal. We also hold that the ruling to the effect that Mr. Jenkins had not satisfied the residency requirement posed by Ark. Const. art. 5, § 4, was correct. We therefore affirm.

### 1. *Rule 78(d) and subject-matter jurisdiction*

■ Arkansas Code Ann. § 7-5-207(b) (Supp. 1997) provides that "[n]o person's name shall be printed upon the ballot as a candidate for any public office in this state at any election unless the person is qualified and eligible at the time of the filing as a candidate for office, to hold the public office for which he is a candidate . . . ." The proper means of enforcing that provision is to petition for mandamus and declaratory judgment. *State v. Craighead County Bd. of Election Comm'rs*, 300 Ark. 405, 779 S.W.2d 169 (1989).

The requirement that a hearing be held on a mandamus petition no less than two and no more than seven days after filing appeared in Ark. Code Ann. § 16-115-104 (1987). The requirement was removed in favor of a 45-day limit by Act 582 of 1991. *See* Ark. Code Ann. § 16-115-104 (Supp. 1997). Recognizing that it was important to retain the shorter time period for hearings

to be held with respect to petitions filed in election cases, we added subsection (d) to Rule 78 in order to retain the two-to-seven day limit for hearings of mandamus petitions filed in election matters. Subsection (d) of the rule provides as follows:

> *Mandamus and Prohibition.* Upon the filing of petitions for writs of mandamus or prohibition in election matters, it shall be the mandatory duty of the judge or chancellor having jurisdiction to fix and announce a day of court to be held no sooner than two (2) and no longer than seven (7) days thereafter to hear and determine the cause.

No cases have been decided interpreting the language of Rule 78(d), but its language is very similar to that found in the statute prior to the adoption of Act 582. In the *Craighead County* case and in *Standridge v. Priest*, 334 Ark. 568, 976 S.W.2d 388 (1998), we emphasized the necessity for promptness in deciding election issues. But in neither of those cases, nor in other cases in which the statute and its mandatory nature were considered, have we suggested that violation of the two-to-seven day provision would deprive the court of jurisdiction. *See, e.g., Rastle v. Marion Co. Rural Sch. Dist.*, 260 Ark. 740, 543 S.W.2d 923 (1976); *Arkansas State Police Comm'n v. Davidson*, 252 Ark. 137, 477 S.W.2d 852 (1973).

Mr. Jenkins has cited cases in which the failure to file an election-contest action in time has been held to deprive the court of jurisdiction. *See, e.g., Gay v. Brooks*, 251 Ark. 565, 473 S.W.2d 441 (1971); *Casey v. Burdine*, 214 Ark. 680, 217 S.W.2d 613 (1949). Such cases do not address the question presented here, which is whether a court that has acquired jurisdiction by a timely filing loses it by failure to hold a hearing in the time required by law.

In *Gilmer v. Massey*, 303 Ark. 634, 799 S.W.2d 526 (1990), an inmate petitioned for mandamus contending a prison official had incorrectly calculated his parole-eligibility date. The hearing was held more than seven days after it was filed, and the inmate contended he was thus deprived of due process of law and was entitled to the relief sought in the petition. We held that the error had no such effect.

In cases that are perhaps more analogous to this one, we have held that provisions setting a time for holding a hearing or taking some action by the trial court are not "jurisdictional." *See Cobbins v. State*, 306 Ark. 447, 816 S.W.2d 161 (1991)(juvenile-transfer hearing not held within 90-day period required by statute); *Haskins v. State*, 264 Ark. 454, 572 S.W.2d 411 (1978)(probation-revocation hearing not held within 60-day period required by statute). In the *Cobbins* case, we mentioned the fact that the statute was silent on the effect of noncompliance. Neither does Rule 78(d) address the effect of noncompliance.

 In view of (1) the lack of any authority that the failure to hold the hearing in a timely manner deprived the court of jurisdiction of the subject matter; (2) the lack of any suggestion in Rule 78(d) or in the former statute on which it is based that a violation of the hearing limit has such an effect; and (3) the holdings of analogous cases that violations of such limits do not have that effect, we cannot say that the failure to follow the rule deprived the court of jurisdiction of the subject matter. It thus was necessary for Mr. Jenkins to have objected to the failure to hold the hearing within the time prescribed, and his failure to do so precludes him from raising the issue on appeal.

In closing on this point, we note that Mr. Jenkins's failure to object to the untimeliness of the hearing makes it unnecessary for us to address the effect that failure to serve him with process prior to, or prior to the expiration of, the two-to-seven day period may have had.

## 2. Residency

According to Article 5, § 4, of the Arkansas Constitution, "[n]o person shall be a . . . Representative who, at the time of his election, is not . . . for one year next preceding his election a resident of the county or district whence he may be chosen . . . ." After hearing testimony on the residency issue, Judge Bogard found that Mr. Jenkins had not resided in District 10 for the year preceding the election.

 The focus here is on the word "resided." In *Charisse v. Eldred*, 252 Ark. 101, 102-03, 477 S.W.2d 480, 480 (1972), we

said that, "[i]n determining qualifications of voters and public officials, the word 'residence' has usually been treated as if it were synonymous with 'domicile' and dependent to some extent upon the intention of the person involved." "The determination of residence is a question of intention, to be ascertained not only by the statements of the person involved, but also from his conduct concerning the matter of residence." *Phillips v. Melton*, 222 Ark. 162, 164, 257 S.W.2d 931, 932 (1953).

Mr. Jenkins presented evidence that, throughout the year preceding the election, he thought of District 10 as his area of residence. He worked in District 10, had his child educated there, received mail at a post office there, and had other ties to the District. He did not, however, actually move to District 10 from his home in District 11 until the spring of 1998 when a home he built in District 10 was completed.

■ ■ "[T]he determination of residence requires an exploration of the candidates' intentions and conduct," *State v. Craighead County Bd. of Election Comm'rs*, 300 Ark. at 410, 799 S.W.2d at 171, and Mr. Jenkins may have had the necessary "intent." There is, however, no question that he did not physically reside or live in District 10 for the full year preceding the election. The essential "conduct" that is missing is the act of "residing" in District 10, *i.e.*, "living" there, being "physically present" there beyond work and civic activities. We cannot ignore the fact that Mr. Jenkins lived in District 11 until March 1998.

> We have held that to effect a change of domicile from one locality or state to another, there must be an actual abandonment of the fist domicile, coupled with an intention not to return to it and there must be a new domicile acquired by actual residence in another place or jurisdiction, with intent of making the last acquired residence a permanent home.

*Phillips v. Sherrod Estate*, 248 Ark. 605, 613, 453 S.W.2d 60, 64 (1970).

Affirmed.