James F. "J.F." VALLEY v.
The Honorable David BOGARD, Circuit Judge;
The Honorable Arnell Willis, State Representative;
Arkansas County Board of Election Commissioners;
Sharon Priest, Secretary of the State of the State of Arkansas;
Arkansas Democratic State Committee;
Phillips County Democratic Committee;
Phillips County Board of Election Commissioners;
Desha County Board of Election Commissioners;
Desha County Democratic Committee;
Arkansas County Democratic Committee;
Monroe County Democratic Committee;
Monroe County Board of Election Commissioners

00-539 28 S.W.3d 269

Supreme Court of Arkansas
Opinion delivered October 12, 2000

*Wilson & Valley*, for appellant.

*Chalk S. Mitchell*, for appellee Arnell Willis.

*L. Ashley Higgins, P.A.*, by: *L. Ashley Higgins*, for appellee Phillips County Board of Election Commissioners.

ROBERT L. BROWN, Justice. Appellant James F. "J.F." Valley appeals from an order declaring him ineligible to stand for election as a candidate for the Democratic Party's primary election and directing that the votes cast for him in that election not be counted. Valley contends on appeal that (1) the trial court did not have jurisdiction to hear the case; (2) service of process on him was ineffective; (3) Pulaski County was not the proper venue for this matter; and (4) the trial court's findings and conclusions are not

supported by substantial evidence. We hold that none of these points has merit, and we affirm.

On or before April 4, 2000, which was the filing deadline, Valley and Appellee Arnell Willis filed as candidates for nomination for State Representative, District 99, in the May 23, 2000 Democratic preferential primary election. District 99 is made up of parts of Phillips, Monroe, Arkansas, and Desha Counties. On April 26, 2000, Willis filed a petition for declaratory judgment and writ of *mandamus* in Pulaski County Circuit Court and prayed to have Valley declared ineligible as a candidate for State Representative, District 99. Specifically, Willis alleged that Valley did not meet requirements to run for that office because he did not live in District 99 for the period of one year prior to the election, as required by Article 5, § 4, of the Arkansas Constitution. He named as defendants Valley; Secretary of State, Sharon Priest; the Arkansas Board of Election Commissioners; the Arkansas Democratic State Committee; the Democratic Committees of Phillips, Desha, Arkansas, and Monroe Counties; and the Boards of Election Commissioners of the same four counties. The trial court later granted the State Democratic Committee's motion to be dismissed.

On May 2 and 3, 2000, a hearing was held before the Pulaski County Circuit Court. On May 4, 2000, the trial court entered an order finding that Valley was not qualified to run for the office of State Representative, District 99. The court ordered that if ballots were already printed, no votes cast for Valley should be counted. Valley appealed and simultaneously petitioned this court for a writ of *certiorari* to have the court reporter prepare the transcript. This court issued that writ. On May 12, 2000, we issued a *per curiam* opinion denying Valley's motions to stay and to expedite his appeal. *See Valley v. Bogard*, 341 Ark. 302, 20 S.W.3d 271 (2000). We further stated that our writ of *certiorari* to the court reporter to immediately prepare the transcript for appeal was improvidently issued, and we withdrew it because Valley had failed to make arrangements for the transcript or to pay the court reporter's fee. *Id.* On May 15, 2000, we issued a *per curiam* opinion, denying Valley's motion for reconsideration. *See Valley v. Bogard*, 341 Ark. 305, 20 S.W.3d 272 (2000). On July 24, 2000, the trial court issued an order in which it granted an extension of time for the court reporter to prepare the transcript. On September 22, 2000, we issued a *per curiam* opinion in which we granted Valley's motion to

expedite this appeal and issued a new writ of *certiorari* to the court reporter to complete the transcript for appeal.

## I. Subject-Matter Jurisdiction

Valley first contends that the trial court never acquired jurisdiction over this matter because this "election contest" should have been brought within twenty (20) days of the filing deadline under Ark. Code Ann. § 7-5-801(d) (Repl. 2000). Valley argues that Willis did not file this action until twenty-two (22) days following the certification complained of and, thus, it was untimely.

■ Valley's argument is without merit. The statute that Valley cites and relies on, § 7-5-801(d), provides a right of action to contest the certification of the nomination or the certificate of vote *after* the election. The twenty-day period, however, is not applicable to an action brought before a primary election to determine the eligibility of a candidate. *Jacobs v. Yates*, 342 Ark. 243, 27 S.W.3d 734 (2000). Specifically, the certification discussed in the statute refers to the certification of a candidate following the primary election as a nominee to the general election, not the certification of the qualifications of a candidate before the primary election. *Id.*

■■ Under this point, Valley also contends that the voters of District 99 have the right to choose their representative and that this court in election cases has always ruled in favor of the candidate who received the greatest number of votes. Neither argument is meritorious. Both the Arkansas Constitution and the Election Code provide that a candidate must be *eligible* in order to be on the ballot and to be elected. Ark. Const. art. 5, § 4; Ark. Code Ann. § 7-5-207(b) (Repl. 2000). Eligibility is the gravamen of this appeal and the essential issue to be decided by this court. We further note on this point that under the May 4, 2000 order of the trial court, the votes cast for Valley were not to be counted, leaving the matter of who prevailed in the primary election an open question. In short, whether Valley received the greater number of votes is unknown to this court.

■ Finally, Valley urges that under Ark. Code Ann. § 7-5-805 (Repl. 2000), the State Claims Commission and not the trial court had jurisdiction to hear this matter. That is not correct. As was the case with respect to § 7-5-801(d), § 7-5-805 applies to *post-*

*election* contests, which is not the issue to be decided. We have held that the appropriate procedure for contesting the eligibility of a candidate and removing that candidate from the ballot before election is a *mandamus* action in conjunction with an action for declaratory judgment. *Jacobs v. Yates*, 342 Ark. 243, 27 S.W.3d 734 (2000); *State v. Craighead County Board of Elect. Comm'ers*, 300 Ark. 405, 779 S.W.2d 169 (1989). We hold that the trial court had jurisdiction to hear this matter.

## II. Service of Process

Valley next argues that he was not properly served with Willis's complaint and summons in this matter. Thus, he contends that the trial court lacked jurisdiction over him. We disagree. At the hearing on May 3, 2000, Blake Travis, an authorized process server, testified that he went to Valley's house to serve him with process, saw Valley's truck in his driveway, knocked on his door, received no answer, went to a side window, saw Valley inside, made eye contact with him, announced that he had papers for Valley, saw Valley fall to his knees and crawl to the back of the house, and stuck the process papers through the front door. Travis also testified that he served Valley a second time in person at the Phillips County Courthouse on May 3, 2000. The trial court held that Valley refused service on April 28, 2000, and that service was complete on that date and again on May 3, 2000.

Valley contradicted this testimony and testified that he did not attempt to avoid service of process. His basic argument on appeal is that the April 28, 2000 service was not proper because it was not served on him personally and that the May 3, 2000 service was not proper because under Ark. R. Civ. P. 78(d), he was entitled to at least two days' notice before the hearing on *mandamus*. He further argues that the summons served on him on May 3, 2000, required an answer within twenty days as opposed to his participation in an ongoing *mandamus* hearing.

■■ Ark. R. Civ. P. 4(d)(1) provides that service can be had on an individual "by delivering a copy of the summons and complaint to him personally, or if he refuses to receive it, by offering a copy thereof to him...." *See Green v. Mills*, 339 Ark. 200, 4 S.W.3d 493 (1999); *Riggin v. Dierdorff*, 302 Ark. 517, 790 S.W.2d 897 (1990)

(held party was properly served when party refused to accept personal service from process server and process server then left complaint and summons on party's property). The trial court clearly believed the testimony of Blake Travis over that of Valley and concluded that Valley had refused service. It is up to the trial court to determine the credibility of the witnesses. *Kelly v. Kelly*, 341 Ark. 596, 19 S.W.3d 1 (2000); *Holaday v. Fraker*, 323 Ark. 522, 920 S.W.2d 4 (1996). Announcing his purpose and then leaving the papers at Valley's house after refusal of service, as the process server did in this case on April 28, 2000, complies with Ark. R. Civ. P. 4(d)(1). We hold that service of process made on Valley on April 28, 2000, was valid, and we affirm the trial court on this point.

### III. Proper Venue

■ For his third point, Valley claims that the trial court erred in denying his motion for change of venue. He asserts that according to Ark. Code Ann. § 7-5-801(b) (Repl. 2000), venue for circuit or district offices lies within "any county in the circuit or district wherein any of the wrongful acts occurred...." Accordingly, Valley maintains that venue in Phillips County was proper and that Pulaski County "is in no way connected with State Representative District 99." Again, Valley's argument in reliance on § 7-5-801(b) must fail. As already held in this opinion, that section sets out the procedure pertaining to election contests *after* the election, which is not the situation before this court.

■ The original action filed by Willis was an action for declaratory judgment and for a writ of *mandamus*. In an action for declaratory judgment, "all persons shall be made parties who have or claim any interest which would be affected by the declaration...." Ark. Code Ann. § 16-111-106(a) (1987). In this case, the persons to be affected by the decision include the State Board of Election Commissioners and the Secretary of State Sharon Priest. It is the State Board of Election Commissioners that has the primary responsibility for conducting political primaries in this state. Ark. Code Ann. § 7-7-201 (Repl. 2000). Further, after the election, the Secretary of State certifies to the county boards of election commissioners the full list of all candidates to appear on the ballot for the general election. Ark. Code Ann. §§ 7-5-203(a), 7-7-401 (Repl. 2000); *see also Willis v. Circuit Court of Phillips County*, 342 Ark. 128,

27 S.W.3d 372 (2000) (*per curiam*). It is clear that these state officials have an interest which would be affected by any declaratory judgment under Ark. Code Ann. § 16-111-106 (a). It is further clear that these state officials are indispensable parties under Ark. R. Civ. P. 19(a) for the relief requested. All actions against state officers which bring into play their official acts must be brought in Pulaski County. Ark. Code Ann. § 16-60-103 (3). Venue in this matter was proper in Pulaski County.

### IV. Evidence of Ineligibility

For his final point, Valley urges that the evidence of his ineligibility was insufficient at best. He correctly asserts that Willis had the burden of proving that he did not reside in District 99 for a period of one year prior to the general election. Nonetheless, we conclude that Willis met that burden with substantial evidence.

In support of his position, Willis presented the following evidence and testimony. Linda White, County Clerk of Phillips County, stated that Valley first registered as a voter in Phillips County in 1987. At that time, he listed his address as 211 S. Coranza St., West Helena, which is located in District 99. On March 31, 1998, Valley changed his voting address to 909 Poplar St., Helena, which is located in District 98. Valley's voting record indicates that he voted as a resident at this address on March 7, 2000, as well as in the school election the previous September.

Valley, however, argues that he changed his voting address on March 20, 1999, to 338 North Baringo, West Helena, which is in District 99 by completing a form and filing it on that date. According to Linda White, however, this change of address was not entered into the county clerk's computer system until March 22, 2000. The clerk stated that she did not know when the address change was received by her office because it was not file marked. Moreover, the trial court noted in its order that it was "unclear" on how Valley could have completed the form in March 1999 in light of the fact that the form was not put into circulation by the Secretary of State's office until May 1999.

Willis presented other testimony of Valley's residence and when he changed his address to 338 North Baringo, West Helena, in District 99. Russ Hodges, general manager of the TV cable

company, Cox Communications, told the court that the company provided service to Elizabeth Valley, Valley's wife, at 909 Poplar Street until it was transferred to 338 North Baringo Street on April 14, 2000. Kathryn Ann Thomas, a billing clerk at the Helena Water Company, testified that she stopped service to Valley at 909 Poplar Street on April 25, 2000. Jacquelyn Clayton, a bookkeeper at West Helena Water Utilities, testified that a water deposit had been paid by Valley for 338 North Baringo Street on April 3, 2000. Clayton also testified that she lives across the street from 338 North Baringo Street, that construction of the house at that address was not completed until late 1999, and that the first time anyone lived in the new house was in April 2000. That person was Valley.

Valley argues that the exhibits offered by Willis were not properly before the trial court for various reasons. He asserts that some exhibits were not properly offered into evidence while others violated the hearsay rule and still others should not have been admitted due to failure to establish a proper foundation. He further urges that Willis attempted to prove Valley's physical residence by using utility hook-up information, but that Willis put forth no direct evidence of Valley's physical residence. For example, he argues that Willis offered no deeds showing the ownership of the land on any of the residences in question.

Finally, Valley contends that Article 5, § 4, of the Arkansas Constitution requires that the candidate live in the "county or district" for one year prior to the election. He claims that the rules of statutory construction require that this section be given its plain and ordinary meaning, and he contends that he has lived in Phillips County for all of the relevant time period. Therefore, he argues that the court should interpret this section of the constitution to require only that he live in either the county or the district, and because he lived in the county, he met the constitutional requirements.

 The Arkansas Constitution requires that no person shall be a state representative who has not, at the time of his election, been a "resident" of the district where he may be elected for one year. Ark. Const. art. 5, § 4; see also Jenkins v. Bogard, 335 Ark. 334, 980 S.W.2d 270 (1998); Brewster v. Johnson, 260 Ark. 450, 541 S.W.2d 306 (1976). We discussed this section of the constitution in Jenkins v. Bogard, supra, and said:

The focus here is on the word "resided." In *Charisse v. Eldred*, 252 Ark. 101, 102-03, 477 S.W.2d 480, 480 (1972), we said that, "[i]n determining qualifications of voters and public officials, the word 'residence' has usually been treated as if it were synonymous with 'domicile' and dependent to some extent upon the intention of the person involved." "The determination of residence is a question of intention, to be ascertained not only by the statements of the person involved, but also from his conduct concerning the matter of residence." *Phillips v. Melton*, 222 Ark. 162, 164, 247 S.W.2d 931, 932 (1953).

335 Ark. at 340, 341, 980 S.W.2d at 274.

■ In the case at hand, the date of the general election when Valley could have been elected state representative is November 7, 2000. Therefore, to be eligible under the constitutional requirements, he would have had to live in District 99 since November 7, 1999. In reviewing findings of nonresidency under Article 5, § 4, we must affirm if there is substantial evidence to support the finding. *Brewster v. Johnson, supra.* Here, the testimony with supporting documents from the county clerk and the testimony with documentation from the cable television manager as well as representatives from two water utilities are probative of Valley's residence. There was also the testimony of Mrs. Clayton who lived across the street from the North Baringo address and who testified about when the new house was occupied. The evidence presented at trial is more than substantial to establish Valley's conduct and the fact that he did not move to District 99 until April, 2000.

■ This court's holding in *Jenkins* is controlling here. In *Jenkins*, we held that the fact the candidate did not actually move into the district until the spring immediately prior to the fall election rendered him ineligible for office under one-year state constitutional residency requirement. *Jenkins v. Bogard*, 335 Ark. at 341, 980 S.W.2d at 274. The same holds true in the instant case. Valley was not eligible to run for state representative for District 99 due to his failure to move into that district until April 2000. The trial court did not err in its finding on this point. Further, we are convinced that Article 5, § 4, of the Arkansas Constitution requires that Valley reside in the legislative district for one year, not merely in the county.

The mandate in this case shall issue immediately.

Affirmed.